[Crim. No. 4582. Fourth Dist., Div. Two. Jan. 28, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ELWOOD LEWIS YOUNGS, Defendant and Appellant.

## COUNSEL

Dougherty & Law and Robert E. Law for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Bernardine M. Baldwin and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—In 1967, defendant pleaded guilty to selling marijuana. The imposition of sentence was suspended and he was placed on probation.

On July 30, 1970, probation was revoked upon the filing of a declaration by the probation officer which contained several allegations of failure to comply with the terms of probation, but the one material to our discussion was a statement that the defendant said he had been using marijuana.

On October 16, 1970, defendant appeared in court with counsel. The court said, "This is the time set for pronouncement of judgment in this matter," and asked counsel if he would waive formal arraignment for judgment. Counsel responded that he would and when asked if there was any legal cause why judgment should not be pronounced, said, "Well, I'm not sure, there may be legal cause. I am not aware of whether or not the defendant has been actually found in violation following the filing of the probation report." There was further discussion of an arrest of defendant where the resulting charge had been dismissed. The court then said, "Yes, but according to the probation report the defendant stated he had been using marijuana which, of course, would be in violation of probation." Counsel responded that the defendant had indicated that such was not the case and that he had not made the alleged statement. Nevertheless, the court, after further discussion, said, ". . . it would appear that there is sufficient information here [in the probation report] to show a violation of the terms and conditions of probation"; and pronounced judgment, sentencing the defendant to state prison, then suspended execution of the sentence, and reinstated and extended his probationary period with the added condition that he serve 90 days in the county jail.

At the outset, it is to be noted that this case involves revocation of probation granted following a suspension of the sentence, not probation granted following the pronouncement of judgment and suspension of the execution

of the sentence. As will be discussed below, these two procedures represent vitally different concepts under current authorities.[1]

Within the context of the proceeding before this court, i.e., revocation of probation granted following suspension of the imposition of sentence, counsel for the defendant contends the procedure followed in this case denied his client due process of law and urges this court to set down some guide lines for proceedings having to do with the revocation and modification of probation. He suggests that the following are not too cumbersome and time consuming considering the consequences of sentencing: (1) Advise the probationer of the allegations of violation of probation; (2) allow the probationer an opportunity to deny or explain the alleged violation and, if necessary, to show that no violation occurred; and (3) allow the probationer to have counsel at such a hearing.

The lack of such a required procedure has previously been the subject of adverse comment by legal writers. (See Note, *Criminal Law—Probation—Right to Hearing on Revocation* (1950) 24 So.Cal.L.Rev. 118; Comment, *Revocation of Conditional Liberty—California and the Federal System* (1955) 28 So.Cal.L.Rev. 158; Van Dyke, *Parole Revocation Hearings in California: The Right to Counsel* (1971) 59 Cal.L.Rev. 1215; Tobriner, Procedural Due Process in the Post-Conviction Period, Preface to 4a Cal. Forms of Pleading and Practice, Annotated.)

In approaching the problem of due process, we start with some basic concepts.

While due process may be an "elusive concept" and its content may vary with circumstances and the necessities of the situation (*Moyer* v. *Peabody*, 212 U.S. 78 [53 L.Ed. 410, 29 S.Ct. 235]), the essence of due process is "the protection of the individual against arbitrary action." (*Ohio Bell Telephone Co.* v. *Public Utilities Commission*, 301 U.S. 292, 302 [81 L.Ed. 1093, 1100, 57 S.Ct. 724].) "Therefore, as a generali-

---

[1]"At the threshold we must distinguish between a case in which the court has properly pronounced judgment but suspended execution during probation and a case in which the court has not rendered judgment but granted probation and, after the revocation of probation, pronounced judgment. The courts have uniformly held that in the first instance no constitutional rights apply to the revocation of probation." (*In re Klein*, 197 Cal.App.2d 58, 62 [17 Cal.Rptr. 71].)

If judgment had previously been pronounced and there had been a suspension of the *execution* of the sentence, the Supreme Court of this state has approved a procedure by which the court may revoke probation ex parte and the probationer may be arrested and, without notice or hearing concerning revocation, be taken directly to state prison. (*In re Davis*, 37 Cal.2d 872 [236 P.2d 579]; see also *People* v. *Mason*, 184 Cal.App.2d 182 [7 Cal.Rptr. 525]; *In re Dearo*, 96 Cal.App.2d 141 [214 P.2d 585].) The only review of such a procedure is by writ of habeas corpus. (*In re Davis, supra*, p. 875.)

zation, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings." (*Hannah* v. *Larche,* 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502].) " 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation.] The hearing must be 'at a meaningful time and in a meaningful manner.' [Citation.]" (*Goldberg* v. *Kelly,* 397 U.S. 254, 267 [25 L.Ed.2d 287, 299, 90 S.Ct. 1011].)

■ As applied to criminal matters, due process generally includes notice (*In re Oliver,* 333 U.S. 257 [92 L.Ed. 682, 68 S.Ct. 499]), presence and a hearing (*In re Green's Petition,* 369 U.S. 689 [8 L.Ed.2d 198, 82 S.Ct. 1114]), and representation by counsel (*Mempa* v. *Rhay,* 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254]).

While the above concepts are rather firmly etched into our judicial process, it is perhaps not too cynical to observe that the outer limits of the application of these concepts depend in some part, at least, upon the current personnel of the highest courts of the nation and the states. Thus in recent times, notions of due process have guaranteed a hearing to welfare recipients before their aid may be terminated (*Goldberg* v. *Kelly, supra,* 397 U.S. 254), and have made major changes in laws pertaining to the garnishment of wages (*Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]), the juvenile court (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]), the repossession of leased premises by a landlord (*Mendoza* v. *Small Claims Court,* 49 Cal.2d 668 [321 P.2d 9]), and attachment proceedings (*Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]). It is obvious that while the basic notion of due process remains the same, the area encompassed by the concept has expanded considerably in the last few years.

With these basic concepts in mind, we turn to the procedures involving revocation of probation.

Revocation proceedings are based upon Penal Code, section 1203.2, which provides in substance that at any time during the probationary period the court may revoke probation if the interest of justice so requires, and if the court in its judgment shall have reason to believe from the report of the probation officer or otherwise that the person so placed upon probation has violated any of the conditions of his probation.

In practice, the probation officer presents a declaration to the court which states that a defendant is on probation on certain conditions and that one or more of these conditions have been violated. Based upon this declaration, probation is revoked, a bench warrant is issued for the arrest of the defendant and the usual order is that the defendant be brought

before the court to show cause, if he has any, why the judgment theretofore suspended should not be pronounced. In the majority of cases, the defendant is missing at the time of revocation. He has, in the language of the probation officer, absconded. But even in those cases in which he is available, the above procedure is used since many probationers might not respond to a less formal notice, and perhaps would abscond upon receiving it. Probationers as a class are not necessarily representative of the most responsible strata of our society and a friendly letter from a probation officer requesting the probationer's appearance in court to show cause why he should not be punished for some current misbehavior would probably produce negative results. When the defendant is in custody, this revocation form is also used as a vehicle to bring the defendant into the jurisdiction of the particular court involved.

Any attempt to clothe the defendant at this stage of the proceeding with the full panoply of rights of an accused who had not been convicted would be absurd. It is necessary for the court to have the authority to summarily revoke probation. As indicated, the defendant usually has absconded. In addition, the revocation has the effect of terminating or tolling the running of the probationary period. If the court did not have the authority to summarily revoke probation, a defendant, by keeping one jump ahead of the constabulary, could conceivably complete his full probationary period while actively engaged in a life of crime.

Thus it has been held there is neither a constitutional nor a statutory right to a hearing *preceding* a revocation of probation. (*In re Levi*, 39 Cal.2d 41 [244 P.2d 403]; *In re Davis*, 37 Cal.2d 872 [236 P.2d 579].) "We are satisfied that neither the Constitution of the United States nor that of California precludes ex parte revocation of probation." (*In re Davis, supra*, 37 Cal.2d 872, 874.)[2] It is from this concept of summary revocation to obtain jurisdiction and physical custody of the defendant and to toll the running of the probationary period that the rule the probationer has no right to notice, hearing or counsel upon revocation of probation has developed. However, hopefully, it was never the intent of the law to deny a probationer an opportunity to defend against an erroneous or false allegation of violation. We do not construe the above rule to mean that the probationer is not entitled to a hearing between the act of revocation and the act of sentencing. Under present procedures, after revocation of probation, when the defendant appears before the court for pronounce-

---

[2]At one time one Court of Appeal held revocation of probation without notice to the defendant and an opportunity to be heard constituted a violation of due process. (*In re Cook*, 67 Cal.App.2d 20 [153 P.2d 578]; see also dissenting opinion in *In re Dearo, supra*, 96 Cal.App.2d 141, 146.) However, the Supreme Court in *In re Davis, supra*, specifically disapproved of *Cook*.

ment of judgment, he is entitled to be represented by counsel (*In re Levi, supra,* 39 Cal.2d 41; *In re Klein, supra,* 197 Cal.App.2d 58), and to an arraignment (Pen. Code, § 1200). It is between the act of summary revocation of probation and the act of sentencing that uncertainties exist and current procedures are inconsistent among trial courts.

In some counties, when the probationer is brought before the court on an allegation of violation of probation, he is furnished counsel, advised of the violation allegation, and asked if he admits or denies the allegation. If he admits it, the court proceeds to the sentencing phase; if he denies it, a hearing is scheduled. At that hearing, the probationer is afforded counsel and given an opportunity to deny or explain the alleged violation. He is also permitted to subpoena and present witnesses.[3] If after the hearing the court finds a violation has occurred, it proceeds to the sentencing phase. If the court finds the violation has not occurred, it sets aside the order revoking probation and restores the defendant to probation.[4]

---

[3]Of course, the court considers the probation officer's report (*In re Dearo, supra,* 96 Cal.App.2d 141) even though that report may, and usually does, contain hearsay. The grounds for revocation need not be established beyond a reasonable doubt. It is sufficient for the violation to be shown "clearly and satisfactorily." (*People* v. *Matranga,* 275 Cal.App.2d 328, 333 [80 Cal.Rptr. 313].) The defendant is not entitled to a jury trial and such a hearing is not covered by the rules which pertain to formal criminal trials. (See *Burns* v. *United States,* 287 U.S. 216 [77 L.Ed. 266, 53 S.Ct. 154]; *United States* v. *Lowe* (2d Cir. 1949) 173 F.2d 346.) The defendant has already been convicted. This is merely a portion of the continuing probation process and under well established and reasonable rules enjoys a certain informality not shared with procedures leading to conviction. This informality is forced upon the court by the realities of the situation. Many times a probationer has been under courtesy supervision in another county. Many reports contain observations of several probation officers, plus police and arrest records. Any rule providing the proof of all the matters contained in a probation officer's report be on the same basis as the proof of an allegation of crime before a jury would place an impossible burden on the administration of justice.

[4]The above represents the practice in Orange County, the county in which the author of this opinion served as a judge of the superior court for many years.

We also note that this is the procedure in the Los Angeles County Superior Court. The "Los Angeles Superior Court Criminal Trial Judges Bench Book," edited by Judges Richard F. R. Hayden and William B. Keene, sets forth procedures identical to those followed in Orange County.

The "Bench Book" also contains the following statement: "The present trend toward increased protection of the defendant has required at least a hearing with counsel before revocation of probation. *In re Turrieta,* 54 Cal.2d 816 (1960); *Mempa* v. *Rhay,* 389 U.S. 128 (1967). Of course, when the probationer has absconded or any information about the violation comes to the court's attention so close to the expiration of the probationary period that there is no time for a noticed hearing, the court must make an ex parte order in order to retain jurisdiction. But thereafter it is most certainly required by the United States Constitution to notice a hearing, at which the probationer is afforded counsel, to review the propriety of the revocation and to take evidence on the question of the alleged violations."

At oral argument, counsel for the defendant advised the court that the same procedure is followed in San Diego County.

In other counties, such as in the instant case, when the defendant appears, the court follows a sentencing procedure and simply arraigns for judgment. Probation having been revoked, the court proceeds to sentence unless the probationer's attorney is adroit enough, when asked if he has any legal cause to show why judgment should not be pronounced (Pen. Code, § 1200), to move to set aside the order revoking probation. (Pen. Code, § 1203.2; *People* v. *De Waele*, 224 Cal.App.2d 512 [36 Cal.Rptr. 825].) There is no noticed hearing in which the probationer is represented by counsel, advised of his alleged violation, given a hearing with an opportunity to deny or explain the alleged violation, or to show no violation occurred.

In 1967, *Mempa* v. *Rhay, supra,* 389 U.S. 128, 137 [19 L.Ed.2d 336, 342, 88 S.Ct. 254], held that upon a revocation of probation, "a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." In *People* v. *Jones,* 263 Cal.App.2d 818, 824 [70 Cal.Rptr. 13], the court said in reference to *Mempa,* "This case does no more than assert that upon deferred sentencing following probation violation, a defendant must be afforded the right to counsel. This has for many years been the rule of California. (See *People* v. *Fields,* 88 Cal.App.2d 30, 32-33 [198 P.2d 104].)"

While it is true that Mempa addressed itself solely to the sentencing process, the court did state that there was a right to counsel (and, as necessarily follows, to presence, notice and hearing) "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." (389 U.S. at p. 134 [19 L.Ed.2d at p. 340].) The only remaining question is whether "substantial rights of a criminal accused" are involved in the revocation of probation process.[5] We think it obvious that they are.

As we have indicated above, there appears to be no question as to

[5]An interesting facet to *Mempa* is its failure to mention *Escoe* v. *Zerbst,* 295 U.S. 490 [79 L.Ed. 1566, 55 S.Ct. 818], which has long been used as the basis for the summary disposition of probation revocation matters. *Escoe* rejected a federal probationer's contention that his right to a hearing on a revocation of probation "has a basis in the Constitution, apart from any statute," and recognized "the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation. . . ." (295 U.S. at pp. 492, 493 [79 L.Ed. at pp. 1568, 1569].) Some of the legal commentators mentioned above refer to this statement as dicta insofar as it applies to the court's decision in *Escoe* since the court went on to hold that Congress had *not* dispensed with notice and hearing in the revocation of probation. Mr. Justice Tobriner in his dissent in *In re Tucker,* 5 Cal.3d 171 [95 Cal.Rptr. 761, 468 P.2d 657], observed, discussing *Mempa,* ". . . the court did not even mention *Escoe* and certainly undermined whatever validity the quoted dicta may have once possessed in analyzing the proper approach to due process in parole revocation." (*In re Tucker, supra,* at p. 189, fn. 30.)

the court's power to summarily revoke probation ex parte. Nor is there any question as to the probationer's right to be heard at the time of sentencing. The question is whether due process calls for a right to be heard on the validity of the revocation *between* the time of revocation and the time of sentencing.

It appears to us that fundamental principles of due process and fair play demand, and we hold, that after a summary revocation of probation and before sentencing a hearing is required at which the defendant is entitled to be represented by counsel, to be advised of the alleged violation and given an opportunity to deny or explain it, and, if necessary, present witnesses on his own behalf.[6]

While the outlined procedure is not explicitly set forth in any statute or appellate opinion, there is authority for the proposition that some substantially similar procedure be followed. Without it, a defendant's remedy of appeal and right to counsel would be significantly impaired. After holding there is no right to a hearing prior to revocation of probation in a case where judgment had been previously pronounced, the court in *In re Davis, supra,* 37 Cal.2d 872, 875, explained: "This is not to say that one whose probation was revoked for no reason, or for an arbitrary reason despite his fulfillment of its terms, is without remedy. If the order of revocation is made in a case where imposition of sentence had been suspended, the validity of the order can be reviewed on appeal from the ensuing judgment of conviction; . . ." Only with a record of a hearing could an appellate court intelligently evaluate a claim probation had been arbitrarily revoked; thus, *Davis* itself suggests the need for a hearing.

We do not anticipate this procedure will place an undue burden on the administration of justice since it is already being followed in the three most populous counties in the state and may well be followed in many more. Under present law, it is not required where probation which was granted after judgment was pronounced and execution of the sentence suspended is revoked; in that situation, probation may be revoked ex parte and defendant taken directly to prison. (*In re Davis, supra,* 37 Cal.2d 872.) Whether that procedure comports with current concepts of due process, we leave to another court on another day. Frankly, we can find no meaningful distinction between the two procedures. They present artificial distinctions with nearly identical consequences for the defendant. In each, the defendant faces the possibility of being denied an opportunity to be heard.

---

[6]At the hearing, the court may, of course, consider the probation officer's report as evidence; the proof is sufficient if it clearly and satisfactorily shows the violation occurred. The defendant is not entitled to a jury trial on that issue.

This is a "significant deprivation." (*Boddie* v. *Connecticut,* 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780].)[7]

The defendant in the instant case not having been afforded a hearing to which he was entitled under basic concepts of due process, the judgment is reversed with directions to the trial court to hold a hearing as outlined above.[8]

Tamura, J., and Gabbert, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 12, 1972.

---

[7]The Superior Court of Orange County follows exactly the same procedure in matters involving suspension of the execution of sentence that it does in cases involving suspension of the imposition of sentence. While this procedure is not called for under *In re Davis, supra,* 37 Cal.2d 872, and is completely extra-legal, it appears to be eminently fair. The picture of a deputy sheriff delivering a probationer to state prison without a hearing to determine whether or not his alleged violation of probation is true is not a pretty one. Even a parolee gets a hearing before the Parole Board on an allegation of violation of parole.

[8]We are aware of the case of *People* v. *Taylor,* 260 Cal.App.2d 393 [67 Cal.Rptr. 180], in which the defendant on a hearing involving revocation of probation contended she was deprived of procedural due process and not permitted an opportunity to answer or refute the charges so made in the probation officer's report. The court concluded: "The record, however, does not support her contention. She was represented by able counsel at all stages of the proceedings. After the court read the supplemental probation report and indicated that he was revoking probation on grounds other than the robbery charge, defense counsel argued that the conduct relied upon by the court did not merit revocation. He, at no time, asked leave to refute the truth of any of the charges and he acknowledged [fn. setting forth statement of counsel] the broad discretion granted to the court in determining the grounds for revocation (*In re Brown, supra* [67 Cal.2d 339 (62 Cal.Rptr. 6, 431 P.2d 630)]). [Fn. discussing *Brown.*]" (260 Cal.App.2d at p. 396.)

However, as we have indicated, we feel the principles of due process and fair play necessitate a hearing such as that described above which must be afforded to the defendant without the necessity of a demand on his part. The record in the instant case is some indication of the necessity for such a rule.

Counsel for the defendant practices in Orange County and was obviously taken aback by a different procedure in another county.

As he said at oral argument, he was faced with a Hobson's choice. With his client facing the penitentiary, he must either battle valiantly for his client's basic rights as he saw them—possibly forgoing effective argument on the sentencing decision—or go along with the procedures being followed in a strange court and thereafter test his legal philosophy on appeal. He chose the latter. Only a judge who has been too long on the bench could fault counsel for his decision.

Thus, not only due process but principles of effective judicial administration necessitate that procedures in this field be consistent throughout the state to avoid situations such as the one which occurred in the instant case.