[Crim. No. 16439. In Bank. Dec. 14, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT NELSON, Defendant and Appellant.

## COUNSEL

Richard D. Totter, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, John T. Murphy, Karl W. Grossenbacher, Robert R. Granucci, Edward P. O'Brien, Derald E. Granberg and Karl I. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Robert Nelson appeals from a judgment upon his guilty plea to a charge of carrying a concealed weapon. (Pen. Code, § 12020.)[1] Following his plea, a probation report was prepared and at sentencing criminal proceedings were suspended and defendant was placed on probation for a period of three years. Within a month he was held to answer new charges of robbery and assault with a deadly weapon. At a hearing attended by defendant and his counsel the court in the instant case read the transcript of the preliminary hearing on the pending charges, the prior

---

[1]Unless it otherwise appears, all statutory references are to sections of the Penal Code.

probation reports and a current report recommending revocation and, without hearing any witnesses on defendant's behalf, revoked probation over defendant's objections that he "didn't do anything to violate." The appeal is from the subsequent judgment.[2]

Defendant contends that the trial court committed prejudicial error in refusing to afford a hearing and an opportunity to present evidence which would have established his innocence of the pending charges upon which revocation was predicated. He relies on *People* v. *Youngs* (1972) 23 Cal. App.3d 180 [99 Cal.Rptr. 901]. (See also *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) Either of these cases, if applicable, would afford defendant the relief he seeks.[3]

We have held today in *People* v. *Vickers, ante,* page 451 [105 Cal. Rptr. 305, 503 P.2d 1313], that *Morrissey* is to be made applicable to probation as well as parole revocations and that proceedings for such revocations must be in compliance with the procedures mandated by *Morrissey*. We further held, however, that as *Morrissey* expressly directs that it be applicable only prospectively from and after its effective date, June 29, 1972, that same date was also the effective date for application of the *Morrissey* procedures in instances involving probation revocations and probation modifications that result in greater restriction of the probationer's liberty. The revocation of which defendant complains occurred a year and a half *prior* to the decision of the Supreme Court in *Morrissey*. Defendant contends, however, that his right to the procedural safeguards required in *Morrissey* actually predate that decision.

The central theme of defendant's argument is that in cases decided prior to *Morrissey* property interests once classified as "privileges" were thereupon deemed to be "rights" with full due process protections before deprivation of the same. Such decisions, defendant contends, must be deemed to

[2] Proceedings were suspended and probation granted on September 18, 1970. The preliminary hearing on the robbery and assault charge was held on October 9, 1970. At that time defendant was on probation not only for the section 12020 violation but also for an earlier misdemeanor conviction. The revocation hearing was held on December 9, 1970, probation was revoked as to the felony conviction and defendant was sentenced to prison for the term prescribed by law. The court stated, as to the misdemeanor conviction, "probation is terminated on that." The precise disposition of the misdemeanor matter does not appear. but defendant makes no complaint in that connection.

[3] *Morrissey* requires in parole revocation proceedings that procedural safeguards. in accordance with minimal standards specified therein, be afforded a parolee under compulsion of due process. *Youngs* holds that although probation may be summarily revoked in a case where probation had been granted prior to the imposition of sentence a probationer is thereafter entitled to a hearing on the merits of the revocation in compliance with due process requirements.

encompass deprivations of the "right" of liberty. *Morrissey,* it is asserted, merely gives expression to such preexisting rules. (See *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]; *Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]; *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Armstrong* v. *Manzo* (1965) 380 U.S. 545 [14 L.Ed.2d 62, 85 S.Ct. 1187]; *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]; *McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]; *Orr* v. *Superior Court* (1969) 71 Cal.2d 220 [77 Cal.Rptr. 816, 454 P.2d 712]; *In re Harris* (1968) 69 Cal.2d 486 [72 Cal.Rptr. 340, 446 P.2d 148].)[4]

Although we concede that the right to liberty is at the very least entitled to protections equal to or greater than those relating to the property interests dealt with in the cited cases, it was not until *Morrissey* that the Supreme Court purported to hold for the first time that a parolee's conditional liberty was entitled to certain due process protections. The court noted that a parolee has necessarily been convicted of a crime against the people; that such conviction justified the imposition of severe restrictions if he is to move freely in society because of the real risk that he may not be able to live without committing additional antisocial acts; and that the state had an "overwhelming interest in being able to return the individual to imprisonment" if he could not adjust to the demands of society. (408 U.S. at p. 483 [33 L.Ed.2d at p. 495].) It is thus not only the tenuous nature of a parolee's or probationer's right in his liberty but also the hazard to which society is exposed which distinguishes the limited right to be free from other rights including property rights. This distinction compels the conclusion that the protection of the limited right of freedom of parolees or probationers must

---

[4]Counsel particularly relies on *Mempa* v. *Rhay* (1967) 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254] as establishing prior to *Morrissey* that a probationer is entitled to a due process hearing on revocation of his probationary status. In *Mempa* as in the instant case, petitioners were placed on probation prior to sentencing and, at proceedings at which they were not represented by counsel following alleged probation violations, probation was revoked and they were sentenced to prison. The high court in that case considered only the question of the right of representation and concluded: "All we decide here is that a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." (389 U.S. at p. 137 [19 L.Ed.2d at p. 342].) In arriving at such conclusion the court relied only on legal principles relating to the right to be represented at sentencing. It has been correctly stated that *Mempa* "does no more than assert that upon deferred sentencing following probation violation, a defendant must be afforded the right to counsel. This has for many years been the rule in California. (See *People* v. *Fields,* 88 Cal.App.2d 30, 32-33 [198 P.2d 104].)" (*People* v. *Jones* (1968) 263 Cal.App.2d 818, 824 [70 Cal.Rptr. 13].) *Mempa* thus does not adjudicate any element of the due process protections announced in *Morrissey* and cannot be deemed as establishing a retroactive date for its application.

be dealt with as an individual and novel matter whose determination could not have been predicated on or dictated by determinations as to other rights which share some but not other critical common characteristics. ■ We cannot, accordingly, conclude that the safeguards prescribed in *Morrissey* predated the filing of the opinion in that case and, in any event, we cannot ignore the high court's clear direction that it intended to speak prospectively only. We do not, moreover, look to the usual tests for determining the retroactivity of a novel rule as we would in those instances where that question is not answered in the written court opinion giving birth to the rule. (See *In re Tahl* (1969) 1 Cal.3d 122, 134 [81 Cal.Rptr. 577, 460 P.2d 449].)

In seeking to rely on *People* v. *Youngs, supra,* 23 Cal.App.3d 180, defendant is again confronted with the burden of establishing that it be applied retroactively. In *Vickers* we were not required to consider whether *Youngs* should be applied retroactively or prospectively only, as *Youngs* expressly excluded its application to a revocation hearing where, as in *Vickers,* probation had been granted after sentence had been imposed and its execution stayed. *Youngs* purports to apply in the instant case, however, where criminal proceedings were suspended before the grant of probation, thus necessitating sentencing and judgment upon the revocation thereof. We must, accordingly, now determine the issue we did not reach in *Vickers.*

■ Whether a rule departing from established practices should be given retroactive application requires a weighing of the following three criteria to determine what application of the new rule, on balance, more nearly accomplishes substantial justice: " '(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.' " (*In re Tahl, supra,* 1 Cal.3d 122, 134.)

The purpose of *Youngs* was to protect a probationer's interest prior to the imposition of judgment and sentence by providing a hearing comporting with due process on the merits of a summary revocation of probation already ordered. In a sense, however, the right to such a hearing preexisted *Youngs* as a defendant could have moved to set aside the order revoking probation (§ 1203.2, subd. (e)) and thus have obtained a due process determination of the merits of the revocation. (*People* v. *De Waele* (1964) 224 Cal.App.2d 512, 516 [36 Cal.Rptr. 825].) In practice then, the *Youngs* rule may be deemed as merely shifting the burden of initiating the hearing from the defendant. It is thus not of such great innovation as a rule which for the first time might have conferred a novel due process hearing in revocation proceedings. We conclude, accordingly, that because a proba-

tioner might have obtained a hearing on the merits of a summary revocation of probation prior to *Youngs,* there is little in the purpose of the rule enunciated in that decision to require any retroactive application.

As to the second criterion, it is clear that the pre-*Youngs* rule had been firmly established in this state for a great number of years. Although it appears that some of the more populous counties had provided without compulsion the equivalent of a hearing as prescribed in *Youngs* prior to the decision (see *People* v. *Youngs, supra,* 23 Cal.App.3d 180, 186), this is not to say that the courts and law enforcement agencies in other counties did not rely on the established procedures.[5] In any event we can only conclude that the reliance by both the People and the accused on pre-*Youngs* procedures, and the courts' reliance on the reports and recommendations of probation departments, has been extensive and well justified under the established practices. Such reliance weighs heavily in the balance against retroactive application of *Youngs.*

The final criteria of retroactive application requires that we consider the effect of retroactivity on the administration of justice. We are aware, of course, of the increasingly large number of persons convicted of crimes who are placed on probation. (See Crime & Delinquency in Cal. 1970, pp. 53-57.) There would unquestionably be a very heavy burden on the administration of justice should a retroactive application of *Youngs,* even for a limited period prior thereto, require a reexamination of the merits of probation revocations of inmates who are currently incarcerated or whose probation was modified so that greater restrictions were placed on their liberty.

The foregoing considerations all suggest that *Youngs* must be limited to prospective application only. Not being a decision of statewide compulsion, moreover, some question might be raised as to its statewide applicability. It may well be argued that once a definitive decision of the Court of Appeal departing from established procedures has become final, there no longer remains any sufficient justification for continued reliance on the old procedures, and the new rule, when as in the instant case it is approved by this court, must be given prospective application from the date of such finality.[6] However, in the particular circumstances before us

---

[5]The fact that the *Youngs* procedures had been voluntarily adopted, or substantially adopted by a significant number of courts would, at least as to revocation proceedings in such courts, render it unnecessary to consider the retroactivity issue. Our concern should be the effect of retroactive application on those courts applying the established rule.

[6]*Youngs* became final on April 27, 1972.

wherein the interrelated demands of *Morrissey* and *Youngs* are predicated on due process concepts, we recognize and give effect to *Morrissey* as an expression of the supreme law of the land. In such circumstances an application of *Youngs* from some earlier date than that mandated by *Morrissey* would only add confusion in the orderly administration of justice. We conclude, accordingly, that *Youngs* is likewise to be applicable from and after the effective date of *Morrissey*, June 29, 1972. As defendant's revocation predated that date and, incidentally, even the finality of *Youngs* by 15 months, neither case affords any relief.

Defendant's remaining contentions are so lacking in merit that they do not require discussion.

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied January 24, 1973.