[Crim. No. 1484. Fifth Dist. June 28, 1973.]

In re LESLIE WAYNE EDGE on Habeas Corpus.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Brian Taugher and James T. McNally, Deputy Attorneys General, for Appellant.

Richard J. Rosasco, under appointment by the Court of Appeal, for Respondent.

## OPINION

**BROWN (G. A.), P. J.**—The People of the State of California have appealed from an order of the superior court which vacated an order of the Adult Authority revoking Leslie Wayne Edge's parole and ordering the Adult Authority to grant Edge a revocation hearing in conformity with the requirements of *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].

*Morrissey* v. *Brewer, supra,* 408 U.S. 471, was decided on June 29, 1972. That case delineates the minimum guidelines that must be followed in parole revocation proceedings under the due process clause of the Fourteenth Amendment.

■ The questions for decision are: (1) Whether the requirements of *Morrissey* apply to a parole revocation proceeding wherein the institutional parole revocation hearing was held after June 29, 1972, though the parole violation charge, the notice of complaint, the arrest, and other steps in the parole revocation process took place prior to June 29, 1972. (2) Assuming that *Morrissey* does apply, to what extent are the requirements of *Morrissey* satisfied by separate criminal proceedings resulting in the conviction of the parolee of offenses which form the basis of the revocation of parole.

Edge was released on parole on June 3, 1971. On October 7, 1971, Edge was arrested for violating Penal Code section 647, subdivision (f), drunk in public, on which charge he forfeited $35 bail on October 18, 1971. On October 28, 1971, he was arrested on burglary and other charges. On December 14, 1971, he pleaded guilty to burglary in violation of section 459 of the Penal Code and spent six months in the county jail on this charge. Edge also pleaded guilty to violation of Vehicle Code section 22350, speeding. At the time the speeding charge was disposed of,

several other vehicle moving violations were also disposed of. He was fined $90 on the traffic violations and served three days in the county jail.

A parole violation charge was prepared on May 26, 1972, charging Edge with having violated his parole conditions by reason of the above recited events. After he finished serving his sentence on the charges in the Orange County jail, he was taken into custody by the Adult Authority. On June 16, 1972, a notice of complaint was prepared charging Edge with the violations referred to; it was served on Edge on June 23, 1972.

An institutional parole revocation hearing was held on July 13, 1972. Edge pleaded nolo contendere; he was found guilty by the Adult Authority and his parole was revoked.

On October 27, 1972, Edge, who was incarcerated at the Sierra Conservation Camp, filed a petition for a writ of habeas corpus in the Superior Court of Tuolumne County, pursuant to which that court entered the order from which the People have appealed.

The chronology shows that the institutional parole revocation hearing was held after the date of *Morrissey,* though all events leading up to the revocation hearing took place before that date. It is conceded that by its terms *Morrissey* is expressly made prospective in operation. In 408 U.S. 471, at page 490 [33 L.Ed.2d 484, at p. 499, 92 S.Ct. 2593, at p. 2604], the court states, "The few basic requirements set out above, which are applicable to future revocations of parole, . . ."

In an effort to avoid the application of *Morrissey* to the case at bench, the appellant makes several arguments, none of which we find to be meritorious. These contentions are: (1) The decision became effective when it became final, which was 25 days after the date of the judgment. (2) There is implied a reasonable time within which to implement the new procedures required by *Morrissey.* (3) The *Morrissey* requirements do not apply to Edge because the proceedings to revoke his parole began before the decision in ·*Morrissey.*

Under United States Supreme Court rule 59, mandates may not issue until 25 days after the date judgment is entered, which period corresponds to the period within which a petition for rehearing may be filed under rule 58. The Attorney General concludes that the decision did not become operative until the 25 days had expired. If we were free to consider this contention as an original proposition, it would seem to have merit.

In the area of constitutional law, however, in considering and referring to the effective date of its decisions for the purpose of determining the date of their operation, the United States Supreme Court itself does not use a date other than the date of the decision. (See *Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030]; *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *DeStefano* v. *Woods* (1968) 392 U.S. 631 [20 L.Ed.2d 1308, 88 S.Ct. 2093]; *Williams* v. *United States* (1971) 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148]; *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Fuller* v. *Alaska* (1968) 393 U.S. 80 [21 L.Ed.2d 212, 89 S.Ct. 61].) Moreover, the California Supreme Court has repeatedly referred to *Morrissey* as being operative from the date it was decided—June 29, 1972. (See *People* v. *Vickers* (1972) 8 Cal.3d 451, 462 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Nelson* (1972) 8 Cal.3d 463, 465, 467, 469 [105 Cal.Rptr. 314, 503 P.2d 1322]; *In re Prewitt* (1972) 8 Cal.3d 470, 476-477 [105 Cal.Rptr. 318, 503 P.2d 1326].)

In the face of this array of impressive authority, it would be presumptuous of this intermediate appellate court to confront the question as if it were an open one. (See also *In re Thomas* (1972) 27 Cal.App.3d 31, 37 [103 Cal.Rptr. 567].)

We therefore hold that the decision was effective as of the date thereof—June 29, 1972—and not upon the expiration of 25 days from that date.

As to the contention that a reasonable time may be implied within which to implement the new procedures, the language of *Morrissey* is plain enough. It distinctly states that it is applicable to future revocations of parole. If the court intended to have set a date for compliance other than the date of the decision, it is manifest that it would have so stated. Absent such expression, the only reasonable conclusion that may be drawn is that the court intended, in accordance with its usual practice, that the effective date would be the date of the decision.

There is no reasonable basis in the language of the decision for an implication that the Supreme Court intended to permit a reasonable time after the date of the decision to implement it. The various United States Supreme Court cases herein cited announcing prospective operation of new constitutional doctrines have not implied such a provision, and such a limitation cannot be implied from the obvious temporary burden that will be placed upon the parole system by making the judgment immediately effective. Counsel for appellant stated at the oral argument that the procedures were implemented within 30 days after the date thereof. It is

now a year since the decision. At this point in time, the effect of ordering compliance with *Morrissey* in the case at bench will be to require scheduling for rehearing the limited number of cases that fall within time limits wherein the parole revocation proceedings were instituted before June 29, 1972, and the final revocation hearing was held after that date. On balance, the due process considerations are of sufficient fundamental importance to the parolees concerned to outweigh the unsubstantial burden on the state in providing to them the required hearings. (See *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 265-266 [25 L.Ed.2d 287, 297-298, 90 S.Ct. 1011, 1019-1020].)

In *Goldberg* v. *Kelly, supra,* 397 U.S. 254, the court recognized that New York City welfare officials could continue to make welfare payments until the new fair hearing procedures outlined in that case could be implemented. (397 U.S. at p. 267, fn. 14 [25 L.Ed.2d at p. 298, 90 S.Ct. at p. 1020].) The status quo in that case was continuing to authorize welfare payments until an adequate hearing could be held. If that principle were applied in this case, it would mean continuing to permit parolees to be at liberty until new parole procedures were instituted—not continuing unconstitutional procedures until that time. *Goldberg,* therefore, affords no support for the appellant's position.

We hold that no implication of a reasonable time after the date of the decision for implementing the procedures necessary to comply with *Morrissey* can be derived from the language of *Morrissey,* from precedent or the circumstances.

Lastly, the appellant argues that because the parole revocation proceedings were instituted by the filing of the parole revocation report on May 26, 1972, *Morrissey* is not applicable even though the in-custody institutional revocation hearing was held on July 13, 1972. The central thrust of this argument is necessarily grounded upon analogizing the filing of the parole revocation report to the commencement of trial in a criminal proceeding. The Attorney General argues the revocation hearing itself is merely the termination of a proceeding which began with the arrest of the parolee, and the filing of the parole revocation report is equivalent to the commencement of trial in a criminal proceeding.

Appellant seeks support in a number of United States Supreme Court cases holding that new constitutional doctrines are applicable prospectively to cases in which trial began after the date of the decisions. For example, see *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772], which held that the doctrines announced in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and

*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], would apply only to cases in which trial began after the date of those decisions; and *DeStefano* v. *Woods, supra,* 392 U.S. 631, 633 [20 L.Ed.2d 1308, 1311], which held that the right to a jury trial under *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444] and *Bloom* v. *Illinois* (1968) 391 U.S. 194 [20 L.Ed.2d 522, 88 S.Ct. 1477] applied only to trials which began after the day those decisions were announced; *Fuller* v. *Alaska, supra,* 393 U.S. 80, which held that the exclusionary rule regarding wiretapping evidence under *Lee* v. *Florida* (1968) 392 U.S. 378 [20 L.Ed.2d 1166, 88 S.Ct. 2096] applies only to trials in which the evidence is attempted to be introduced after the date of the decision. However, it is patently obvious that the trial is normally preceded by many steps in the process of a criminal prosecution, such as an indictment or a complaint, the arrest, a preliminary hearing, discovery proceedings, and pretrial conference. Yet, in each of the above cases, at whatever step up the prosecutorial ladder the case may have been at the time of the announcement of the constitutional doctrine, the directives promulgated still applied to the particular case in process so long as the trial had not occurred.

In-custody institutional revocation hearings are preceded by parole violation charges, the arrest, notice of complaint, and other preparations for the revocation hearing. By a parity of reasoning, we fail to perceive why a doctrine announced during those steps up the ladder of parole revocation should not be applicable so long as the in-custody revocation hearing itself has not taken place; the revocation hearing is the crucial event. "The revocation hearing itself . . . must lead to a final resolution of contested facts and a conclusion whether such facts as determined warrant revocation of parole." (*People* v. *Vickers, supra,* 8 Cal.3d 451, 457.)

From what has been said, it is apparent that the filing of the parole revocation report cannot be equated to the commencement of trial in a criminal proceeding. On the contrary, the institutional revocation hearing is akin to the trial phase in a criminal proceeding for these purposes.

There are, of course, several cases holding that new constitutional doctrines will be applied to certain events which occur after the date of the decision announcing the new doctrine, and the events referred to are events which will occur at some time in the criminal process prior to the trial itself. For example, *Desist* v. *United States, supra,* 394 U.S. 244, held that the constitutional doctrines announced in *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], concerning the use of wiretap evidence, would apply only to cases in which the searches

were conducted after the date of the decision. And see *Stovall* v. *Denno, supra,* 388 U.S. 293, which held that the right to counsel at a lineup applies only to lineups held after June 12, 1967, the date of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], which announced that doctrine. We have found no case, however, and counsel have pointed to none, that relates the effective date to the date a complaint is filed or indictment returned. In the instant case, there appears to be no logical or demonstrable relationship between the effective date of the decision and the date that the parole revocation report was filed on May 26, 1972.

Accordingly, we hold that all the requirements of *Morrissey,* including the holding of a preliminary hearing, must be complied with in any case in which the in-custody parole revocation hearing was not completed as of June 29, 1972.

■ We turn to the question of the effect of separate criminal proceedings on the requirements of *Morrissey.*

The minimum requirements of due process at the revocation hearing were stated in *Morrissey* to include: ". . . (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499, 92 S.Ct. at p. 2604].)

At this hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." (408 U.S. at p. 488 [33 L.Ed.2d at p. 498, 92 S.Ct. at p. 2603].) The case further states: "Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." (408 U.S. at p. 490 [33 L.Ed.2d at p. 499, 92 S.Ct. at p. 2605].)

It follows that insofar as the revocation of parole may be based on actual conviction of other crimes, the issues underlying guilt need not be reproven. However, the parolee should be able to present evidence at the revocation hearing that he is not the person convicted, the offense of which he was convicted was other than the one specified as a parole violation, that the parole violation report or complaint charging the violation is inaccurate or contains misinformation, and other facts and circumstances in explanation or mitigation.

Edge also contends he is entitled to an informal preliminary hearing described in *Morrissey* (see 408 U.S. at pp. 485-487 [33 L.Ed.2d at pp. 496-498, 92 S.Ct. at pp. 2602-2603]) on all the charged parole violations, including those upon which he has suffered a criminal conviction. For the reasons hereinafter stated, we hold he is not entitled to such a hearing on those charged violations which are supported by a criminal conviction in an independent criminal proceeding.

A description of these preliminary proceedings is summarized in *People v. Vickers, supra,* 8 Cal.3d 451, at pages 456-457, as: ". . . an initial determination that there exists or does not exist grounds which may support revocation thus justifying a temporary detention pending formal revocation proceedings, . . .

"The court likened the initial proceedings to a preliminary hearing for the determination of 'probable cause or reasonable ground' to believe that a parole violation has occurred, and stated that, 'due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.' [Citation.] The determination need not be made by a judicial officer, but could be made by some qualified person such as a parole officer who was not directly involved in the case. The initial hearing need not be formal, but the parolee must be given notice of the time, place and purpose thereof, and of the alleged parole violations. At the hearing the parolee is entitled to appear and speak personally in his own behalf, and bring and present letters, documents and other persons who can give relevant information to the hearing officer. Adverse witnesses are to be made available for questioning by the parolee except when the hearing officer determines that an informant would be subject to risk of harm if his identity were disclosed. The hearing officer must make a summary or digest of the proceedings and must determine if there exists probable cause to hold the parolee for revocation proceedings against him."

In *Morrissey,* the court noted that "We have no thought to create an inflexible structure for parole revocation procedures." (408 U.S. at p. 490 [33 L.Ed.2d at p. 499, 92 S.Ct. at p. 2604].)

It is implicit in the language and factual setting of *Morrissey* that the court is prescribing a preliminary hearing procedure only when the charges against the parolee are not based upon criminal charges which are being prosecuted under the criminal law. The high court did not intend to duplicate criminal procedures. As clearly explicated by Justice Douglas in his partial dissent[1] exempting from the due process requirements parole revocation proceedings in which criminal proceedings have taken place: "We except of course the commission of another offense which from the initial step to the end is governed by the normal rules of criminal procedure." (408 U.S. at p. 499, fn. 12 [33 L.Ed.2d at p. 505, 92 S.Ct. at p. 2610].)

The preliminary hearing requirements of *Morrissey* are to assure that a parolee is not returned to prison to wait an extended period for an in-custody revocation proceeding hearing without first having had a hearing to determine if there is probable cause to believe he is guilty of the violations charged.

When a parolee is arrested and prosecuted on criminal charges, the criminal prosecution itself is adequate protection against the evils and dangers *Morrissey* was designed to protect against. An indictment or a preliminary hearing in criminal proceedings meets all the requirements of *Morrissey.* If the preliminary hearing is waived and the parolee pleads guilty or is found guilty after trial, conviction of crime by a court under the stringent standards of proof, stricter procedural requirements, and the antiseptic atmosphere of the courtroom afford the parolee far more protection than do the preliminary hearing procedures announced in *Morrissey.* If the parolee was convicted of a crime forming the basis of the revocation proceedings, there was obviously probable cause to hold him for a parole violation. (See *In re Scott* (1973) 32 Cal.App.3d 124 [108 Cal.Rptr. 49].)

---

[1]Justice Douglas' partial dissent was not based upon the ground that the majority opinion disagreed with this statement. In context it appears he was explicating a conclusion that the entire court had arrived at. See the majority opinion in 408 U.S. at page 490 [33 L.Ed.2d at p. 499, 92 S.Ct. at p. 2605], where it is said: "Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime."

It is ordered that the Adult Authority conduct further hearings in conformity with the guidelines explicated in *Morrissey* v. *Brewer, supra,* 408 U.S. 471, and the views expressed herein, to commence within 30 days after this decision becomes final, and as so modified the order appealed from is affirmed.

Gargano, J., and Franson, J., concurred.

A petition for a rehearing was denied July 18, 1973, and the opinion was modified to read as printed above.