[Crim. No. 7172. Third Dist. Jan. 9, 1974.]

In re ALBERT C. OGLESBY on Habeas Corpus.

## COUNSEL

Rodney J. Shepherd, under appointment by the Court of Appeal, and Robert Young for Petitioner.

Evelle J. Younger, Attorney General, and Anthony Dicce, Deputy Attorney General, for Respondent.

## OPINION

**REGAN, J.**—We issued an order to show cause in response to an application by petitioner Albert C. Oglesby for a writ of habeas corpus wherein he contends the revocation of his parole by the Adult Authority on November 2, 1972, did not conform to the requirements set forth in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].

The sole issue before us is whether or not petitioner was entitled to be represented by counsel during his in-community prerevocation hearing and the final in-prison revocation hearing.

Petitioner's request that his own private counsel be permitted to represent him having been denied, he contends this denial was contrary to the holding in *Morrissey*. In *Morrissey* the court specifically declined to reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent. (*Id.* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499].)

Subsequent to *Morrissey, Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756], held that under certain circumstances

probationers and parolees are entitled to appointed counsel. The *Gagnon* court stated (411 U.S. at pp. 790-791 [36 L.Ed.2d at pp. 666-667]): "We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."

The court did not address itself to the question of retroactivity. Some of the court's language, however, would appear to indicate that its decision would be prospective only. For example, the court stated (411 U.S. at pp. 787-788 [36 L.Ed.2d at p. 665]): "The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hear-

ing body itself, aptly described in *Morrissey* as being 'predictive and discretionary' as well as fact finding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee. In the greater self-consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate rather than continue nonpunitive rehabilitation. Certainly, the decisionmaking process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.[11]

"Footnote [11] The scope of the practical problem which would be occasioned by a requirement of counsel in all revocation cases is suggested by the fact that in the mid-1960's there was an estimated average of 20,000 adult felony parole revocations and 108,000 adult probation revocations each year. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 56 n 28 (1967)."

After a careful reading of *Gagnon,* we conclude that nothing in that decision requires its retroactive application.

■ "Whether a rule departing from established practices should be given retroactive application requires a weighing of the following three criteria to determine what application of the new rule, on balance, more nearly accomplishes substantial justice: ' "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." ' [Citation.]" (*People* v. *Nelson* (1972) 8 Cal.3d 463, 467 [105 Cal.Rptr. 314, 503 P.2d 1322]; *Halliday* v. *United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498] [criteria apply to newly adopted constitutional rulings].)

As to the first criterion, the court in *Gagnon* explains the purpose of the rule as follows: "[T]he effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." (411 U.S. at pp. 786-787 [36 L.Ed.2d at p. 664].)

The rules set forth in *Gagnon* implement the court's decision in *Morrissey*

which basically was concerned with a fact finding process. Generally, proceedings for the resolution of facts have been held to be prospective only. (*Adams* v. *Illinois* (1972) 405 U.S. 278, 281-283 [31 L.Ed.2d 202, 207-208, 92 S.Ct. 916].)

"[T]he fact that a new rule tends incidentally to improve or enhance reliability does not in itself mandate the rule's retroactive application. The Court in *Johnson* v. *New Jersey,* 384 U.S., at 728, repeated what had been suggested in *Linkletter* and *Tehan,* that 'we must determine retroactivity "in each case" by looking to the peculiar traits of the specific "rule in question" ' and

" 'Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree . . . . We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial.' 384 U.S., at 728-729.

"See *Michigan* v. *Payne,* 412 U.S., at 55. Thus, retroactivity is not required by a determination that the old standard was not the most effective vehicle for ascertaining the truth, or that the truth-determining process has been aided somewhat by the new standard, or that one of the several purposes in formulating the new standard was to prevent distortion in the process." (*Gosa* v. *Mayden* (1973) 413 U.S. 665, 680 [37 L.Ed.2d 873, 887-888, 93 S.Ct. 2926].)

The court in *Gagnon* recognized that the procedural protections established by *Morrissey* serve as substantial protection against improper parole revocations. "These requirements [*Morrissey* rights] in themselves serve as substantial protection against ill-considered revocation . . . ." (411 U.S. at p. 786 [36 L.Ed.2d at p. 664].) Thus, the decision in *Gagnon* recognizes that a limited requirement of counsel is not essential to preserve the integrity of the factfinding process. Since *Gagnon* merely implements the basic rights guaranteed by *Morrissey,* there would appear to be no compelling reason to apply *Gagnon* retroactively under the first criterion.

As to the second criterion, the past reliance by the Adult Authority upon the pre-*Morrissey* rule excluding counsel at revocation hearings militates against retroactive application of *Gagnon.* (*In re Tucker* (1971) 5 Cal.3d 171, 176-180 [95 Cal.Rptr. 761, 486 P.2d 657].) It is also noteworthy that *Morrissey* declined to decide that a right to counsel was one of the enumerated protections.

Finally, as to the third criterion, the retroactive application of *Gagnon* would have a substantial adverse effect upon the administration of the parole system. (See *People* v. *Nelson, supra,* 8 Cal.3d at pp. 467-469; *In re Tucker, supra,* 5 Cal.3d at pp. 179-180; see also *Gagnon* v. *Scarpelli, supra,* 411 U.S. at p. 788, fn. 11 [36 L.Ed.2d at p. 665, fn. 11].)[1]

■ We therefore conclude that under the three-pronged test, *Gagnon* should not be applied retroactively. (Cf. *Michigan* v. *Payne* (1973) 412 U.S. 47, 51-52 [36 L.Ed.2d 736, 742-743, 93 S.Ct. 1966].)

When *Morrissey* was decided, California followed the rule that parolees were not entitled to the assistance of counsel at parole revocation hearings. (*In re Tucker, supra,* 5 Cal.3d at p. 180.) This rule was not affected by *Morrissey* since that decision did not determine the issue of the right to counsel at parole revocation proceedings. Also, *Tucker* distinguished parole revocation from probation revocation where the latter involves sentencing proceedings:

"Therefore, notwithstanding the Adult Authority's internal characterization of parole revocation proceedings as involving an 'adjudication' process, revocation of parole cannot be considered a judicial act. This fact seemingly would distinguish these proceedings from the deferred sentencing procedures involved in *Mempa* v. *Rhay,* 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254], relied upon by petitioner. In *Mempa,* defendant was brought before the trial court for a hearing on the revocation of his probation and the imposition of his sentence, which had been deferred during the probationary period. As these proceedings constituted merely a continuation of the original judicial proceedings instituted against defendant, the United States Supreme Court held that defendant had a right to be represented in court by counsel, stating that right to counsel extends to 'every stage of a criminal proceeding where substantial rights of a criminal accused may be affected.' (389 U.S. at p. 134 [19 L.Ed.2d at p. 340].) The court stressed that counsel's assistance would be required to influence 'judicial discretion' (the trial court was authorized to make recommendations to the Board of Prison Terms and Paroles regarding defendant's actual prison term) and to protect defendant's 'legal rights' (such as right to appeal). (389 U.S. at p. 135 [19 L.Ed.2d at pp. 340-341].) However, it is significant that the court did not suggest that counsel would be required during the subsequent administrative stage when the board itself determines the actual term which de-

---

[1]The People in their return have included as exhibit D a memorandum from the Department of Corrections projecting that "if the provisions of the *Gagnon* decision are made applicable to the start of *Morrissey,* the retroactive provisions would require the conducting of 400 pre-revocation and 800 full revocation hearings."

fendant must serve." (5 Cal.3d at p. 177; see also *Morrissey* v. *Brewer, supra,* 408 U.S. at p. 480 [33 L.Ed.2d at p. 494].)

In *People* v. *Vickers*[2] (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], the court also noted the judicial versus the administrative distinction discussed in *Tucker* and *Morrissey.* (*Id.* at pp. 458-459; but see Note, 1 Western State U. L.Rev. 230 [criticizes distinction].) The court pointed out (at p. 461) that "*Morrissey* does not compel that the defendant be represented on revocation of parole, the majority [of the members of the Supreme Court] stating that they did not reach that question." Nevertheless, *Vickers* went on to hold, not as a matter of constitutional law, but "as a judicially declared rule of criminal procedure," that "a *probationer* is entitled to the representation of retained or appointed counsel at formal proceedings for the *revocation of probation,* or following such summary revocation in appropriate cases." (8 Cal.3d at pp. 461-462; italics added and fn. omitted.)

The *Vickers* case, however, did not involve revocation of parole. A footnote in *Vickers* (fn. 13, at p. 462) expressly states that, although the *Vickers* holding is to be effective as of the date *Morrissey* was filed, nevertheless *Vickers* "is applicable only to orders which revoke probation or modify it in a manner which places greater restrictions on the probationer's liberty." Thus, *Vickers* did not affect *Tucker* which involved parole (i.e., administrative) revocation proceedings.

▮ Petitioner's parole was revoked on November 2, 1972. This revocation preceded the decision in *Vickers* (Dec. 14, 1972) and the decision in *Gagnon* (May 14, 1973). Thus, *Tucker* was controlling. We therefore conclude that state decisional law did not require counsel at petitioner's parole revocation hearing.

The order to show cause is discharged and the petition denied.

Richardson, P. J., and Vasey, J.,* concurred.

---

[2]*Vickers* was decided on December 14, 1972, or five and one-half months after *Morrissey.*

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.