[Crim. No. 5367. Fourth Dist., Div. One. May 7, 1973.]

In re WENFORD LA RUE SCOTT on Habeas Corpus.

## Counsel

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Daniel J. Kremer and Harley D. Mayfield, Deputy Attorneys General, for Appellant.

Norbert Ehrenfreund, under appointment by the Court of Appeal, for Respondent.

## OPINION

**WHELAN, Acting P. J.**—This is an appeal by the People of the State of California from a final order in a proceeding arising out of the petition of Wenford La Rue Scott for a writ of habeas corpus.

The order was that the Adult Authority: " . . . conduct a preliminary hearing in accordance with the decision and rules of *Morrissey* v. *Brewer, supra,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] to determine whether there is probable cause to believe that WENFORD LARUE SCOTT has committed acts which would constitute a violation of his parole conditions . . . in San Diego, California, at the earliest possible date, which date shall not be sooner than 10 days after notice has been given to counsel for petitioner."

Scott was released on parole on June 5, 1972, from a concurrent sentence for two counts of second degree burglary imposed by the Superior Court of San Diego County in February 1970.

A condition of parole to which he agreed by his signature was that he "obey all Federal and State laws, and municipal and county ordinances."

He was arrested for burglary on July 4, 1972, in San Diego County, and in a trial by jury was found guilty on September 20 of burglary of the second degree. On October 11, imposition of sentence was suspended for three years and probation granted, one condition being a year's confinement in the custody of the sheriff.

On August 11, Scott, over his signature, acknowledged receipt of a "Notice to Parolee in Custody Pending Prosecution," which recited in part: "Due to the pending criminal matter, no action on revocation proceedings will be taken by the Adult Authority at this time. As soon as the criminal proceedings are finished, whether favorably to you or not, your case will be promptly examined to determine whether you should be reinstated on parole or what other action would be proper."

The fact of that conviction came to the attention of Scott's local parole officer, who made a report to the Adult Authority in which he recommended continuance on parole in view of the probation order's condition of one year's local confinement. The Adult Authority, at its meeting of November 3, 1972, received the parole officer's report and ordered the parole suspended and that Scott be returned to the penal institution for a revocation hearing.

On November 3, 1972, his attorney, on behalf of Scott, filed a petition for writ of habeas corpus in the superior court. It alleged Scott had not

received a preliminary hearing as required by *Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].

The petition alleged also that Scott was in the San Diego County jail resulting from "1972 violation of Penal Code section 459, second degree," for which he was given probation on October 11; that an appeal was not taken, but "may be taken at a later date."

Scott has, since the hearing on the return of the writ of habeas corpus, filed, on November 27, 1972, a notice of appeal to this court from the order of October 11 granting probation. We take judicial notice of the record in that appeal, from which it appears that bail had been fixed at $2,000 in that matter from at least the date of his first appearance in the superior court on August 7, and was so continued until the date of trial, September 14, during all of which time defendant was in custody.[1]

The question presented is whether in the circumstances of this case the informal preliminary hearing described in *Morrissey* v. *Brewer, supra,* 408 U.S. 471, need be held to determine whether probable cause exists to retake a parolee into custody.

Decided on June 29, 1972, *Morrissey* v. *Brewer,* by its own declaration, was to apply to future revocations of parole. It held that the parole of a prisoner may not be revoked without certain procedural safeguards to insure due process, including an informal preliminary hearing to determine whether probable cause exists to retake him into custody, of which hearing and of the alleged grounds for which he should have written notice; and if such cause is found to exist by the hearing officer, who should not be the parolee's supervisory officer, a further hearing at the prison to determine whether parole should be revoked.

In argument at the hearing on the return to the writ of habeas corpus, counsel for Scott denied any claim the question of his conviction of the burglary might be relitigated in the type of preliminary hearing called for by *Morrissey* v. *Brewer, supra,* 408 U.S. 471, but stated he felt his client had a right to present such evidence "as would support his way of life."

Counsel went further to make it clear that what he wanted for his client was that the court should order the revocation hearing itself be held in San Diego County for the convenience of Scott's witnesses, including the

---

[1]We do not consider the filing of the notice of appeal to detract from the sufficiency of the proceedings prior thereto to establish the existence of probable cause upon the basis of which the Adult Authority suspended Scott's parole pending a hearing to determine whether parole should be revoked.

judge who granted probation with knowledge of all the facts, and the parole officer who had recommended that parole be continued.

We are convinced the Supreme Court in *Morrissey* did not intend merely to contribute to a proliferation of hearings to cumber the machinery of the administration of justice.

*Morrissey* was premised on the idea of protecting an interest, the liberty of the parolee, and that interest was to be protected by the "preliminary hearing."

Scott had been in local custody since prior to his receipt of the notice to parolee in custody pending prosecution. Action to suspend that parole was taken only after an independent trier of fact had first found in the preliminary hearing before the magistrate that there was probable cause to believe he had committed a burglary, and another independent trier of fact had found that indeed he did commit a burglary. In both instances he was represented by counsel.

The action to suspend the parole pending a revocation hearing was not taken on the basis of a report of a parole officer that did not evaluate the facts objectively, but was taken against the recommendation of the parole officer.

The petition for writ of habeas corpus itself alleged confinement resulting from a violation of Penal Code section 459.

In short, when the Adult Authority directed there be a revocation hearing, the criteria had already been met for an impartial determination that there was probable cause to believe Scott had violated a condition of parole.

Concerning a revocation hearing, the court in *Morrissey* stated: "[A] parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." (*Morrissey* v. *Brewer,* 408 U.S. 471, 490 [33 L.Ed.2d 484, 499, 92 S.Ct. 2593, 2605].)

That must apply with no less force where the question is the existence of probable cause to commence a revocation process.

Scott had been sufficiently apprised that suspension of parole would be considered for the offense for which he was in custody in San Diego.

*Morrissey* does not hold or suggest that if at the preliminary hearing probable cause is shown, the hearing officer may consider matters in mitigation. Such matters are for the revocation hearing.

The revocation hearing itself need not be held near the place where the parolee was retaken into custody, but only the preliminary hearing must be so held.[2]

The order appealed from is reversed.

Ault, J., and Cologne, J., concurred.

---

[2]The following excerpts from *Morrissey* v. *Brewer*, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] support our conclusions as to its effect in this case: "[I]t may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. [Citation.] Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions. [Citation.]

"In our view due process requires that after the arrest, the determination that reasonable grounds exist for revocation of parole should be made by someone not directly involved in the case. . . . [408 U.S. p. 485 (33 L.Ed.2d pp. 496-497, 92 S.Ct. p. 2602).]

". . . The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest the violation does not warrant revocation. . . . [408 U.S. p. 488 [33 L.Ed.2d p. 498, 92 S.Ct. p. 2603).]

"We have no thought to create an inflexible structure for parole revocation procedures. . . . [408 U.S. p. 490 (33 L.Ed.2d p. 499, 92 S.Ct. p. 2604).]

". . . If it is determined that petitioners admitted parole violations to the Parole Board, as Iowa contends, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." [408 U.S. p. 490 (33 L.Ed.2d p. 499, 92 S.Ct. p. 2605).]