[Crim. No. 7279. Third Dist. July 22, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DONALD RUSTER, Defendant and Appellant.

## COUNSEL

Glendalee Garfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Garrick Chock, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, J.**—Defendant was convicted of felony violation of section 529 of the Penal Code[1] (false personation) by plea of guilty entered January 8, 1971. On January 26, 1971, the imposition of judgment and sentence was suspended for a period of three years during which period defendant was placed on probation subject to the condition among others that he not violate any laws, state, federal or local. On September 12, 1973, probation was revoked and defendant sentenced to the state prison for the term prescribed by law. Defendant timely filed a notice of appeal purporting to appeal from the "judgment revoking probation." When entered before the imposition of sentence the order revoking probation is non-appealable. (*People* v. *Robinson* (1954) 43 Cal.2d 143, 145 [271 P.2d 872].) However, we treat the instant appeal as from the judgment entered after order revoking probation in which appeal the validity and merits of the order are reviewable. (*People* v. *Smith* (1970) 12 Cal.App.3d 621, 624 [90 Cal.Rptr. 811].)

On appeal defendant raises two contentions:

(1) That the trial court lacked jurisdiction to revoke probation and consequently to impose sentence; and,

(2) That delay in the revocation proceedings effectively deprived him of due process of law. For the reasons set forth herein we reject both of defendant's contentions and affirm the judgment.

On October 17, 1972, the probation officer filed with the trial court a request for revocation of probation alleging a violation thereof in that on June 7, 1972, in Santa Clara County defendant committed the crimes of forgery (§ 470) and grand theft (§ 484). On the same day the trial court issued a bench warrant ordering defendant to be brought before the court to show cause why his probation should not be revoked. On

---

[1]Unless otherwise indicated, all section references hereafter are to the Penal Code.

November 20, 1972, the bench warrant was lodged against defendant as a hold, presumably with the Santa Clara County authorities. On November 21, 1972, defendant was convicted in Santa Clara County Superior Court of grand theft (§ 484) and multiple counts of forgery (§ 470) for which offenses he was on or about November 28, 1972, sentenced to state prison. On December 14, 1972, while confined in prison, defendant directed a letter to the Yolo County Probation Department in which he recited the Santa Clara convictions and sentence and, referring to the warrant lodged against him for probation violation, demanded "a Court hearing within 60 days or dismissal of said hold."[2] The letter was received in due course by the probation department but was not then brought to the attention of the court or the district attorney, each of whom was unaware of defendant's subsequent conviction, place of confinement and demand for hearing. Accordingly, no action was taken on the demand. On August 8, 1973, the clerk received a document executed by defendant in state prison purporting to be a notice of appeal "from the plea of guilty entered on or about February 1971." This document, of no legal effect, came to the attention of the district attorney and served to inform him of the defendant's confinement in state prison on a subsequent offense. As a result the district attorney caused the defendant to be returned to court for hearing on the alleged violation of probation. After a series of hearings commencing August 23, 1973, in which defendant asserted lack of jurisdiction in the trial court, defendant's claim was rejected and he was found in violation of probation which was then revoked. Defendant was sentenced to the state prison, the sentence to run concurrently with any other prior incompleted sentences then being served and defendant to be given credit for time served from 60 days after December 14, 1972.

The defendant first contends that the trial court lost jurisdiction by

---

[2]Defendant's letter was before the trial court but was not received in evidence as an exhibit. The court read the body of the letter into the record. Because of its importance to the disposition of this appeal that portion of the record is set out in full as follows: " 'Please take notice that I, Gary Donald Ruster, inmate of the Vacaville Medical Facility, California Department of Corrections, was convicted of the crimes of Grand Theft and Forgery, 14 Counts, with prior felony convictions, each count of forgery in the Superior Court of Santa Clara County, California, and was sentenced by said Court on or about November 28, 1972, to serve an indeterminate term of 6 months—10 years and 6 months—14 years, 14 counts of forgery in the State Prison of the State of California.

" 'A hold was placed upon me by Yolo County on or about November 20, 1972 for a violation of probation.

" 'I hereby demand a Court hearing within 60 days or dismissal of said hold.

" 'I certify under penalty of perjury that the foregoing is true and correct. Done at the California Medical Facility, Vacaville, California, this 14th day of December, 1972.

" 'Signed Gary Donald Ruster, No. B45170.' "

failure to act seasonably on the defendant's demand for hearing of December 14, 1972. ■ During the probationary period the court shall have the authority "at any time" to revoke its order ·of suspension of imposition of sentence (§ 1203.3). The order of revocation here occurred prior to the expiration of the three-year probationary term. Absent some superseding consideration, the order is within the jurisdiction of the court.

The provisions of section 1203.3 notwithstanding, the trial court may lose jurisdiction if the defendant invokes the provisions of section 1203.2a and the court does not respond thereto in a timely manner. Section 1203.2a provides in pertinent part as follows: "If any defendant who has been released on probation is committed to a prison in this State for another offense, the court which released him on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he was granted probation, in the absence of the defendant, on the request of the defendant . . . in writing, if such writing is signed in the presence of the warden or superintendent of the· prison in which he·is confined or the duly authorized representative of the warden or superintendent, and such warden or superintendent or his representative attests both that the defendant has made and signed such request and that he states that he wishes the court to impose sentence in the case in which he was released on probation, in his absence and without his being represented by counsel. ¶ [I]f sentence has not been previously imposed and if the defendant has requested the court . . . in writing in the manner herein provided to impose sentence in the case in which he was released on probation in his absence and without the presence of counsel to represent him, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. . . . If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence."

■ The purpose of section 1203.2a is to prevent inadvertent consecutive sentences which would deprive defendant of the benefit of section 669, providing that sentence shall be concurrent unless the court ex-. pressly orders otherwise. (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal. Rptr. 780, 460 P.2d 980]; *People* v. *Davidson* (1972) 25 Cal.App.3d 79, 85 [101 Cal.Rptr. 494].) When the state has provided a means to enable

an incarcerated defendant to preserve his right to concurrent sentences, it is not improper to preserve the jurisdiction of the court until it has been ousted by strict compliance with the terms of the statute, or until such time as the defendant has been prejudiced by errors or omissions of some agent of the state. (*In re Brown* (1971) 19 Cal.App.3d 659, 666 [97 Cal. Rptr. 71].)

█ It is immediately apparent that the defendant's letter of December 14, 1972, is not in strict compliance with the provisions of section 1203.2a. It did not request imposition of sentence and was neither signed in the presence of the warden or superintendent or his representative nor was it accompanied by the required attestation of that official.

Section 1203.2a further provides that the probation officer "must within 30 days after being notified in writing by the defendant . . . of the prison in which [he] is confined, report such commitment to the court which released him on probation." █ It is uncontradicted that the probation officer failed to comply with this provision. However, the trial court is powerless to impose sentence in absentia or without representation of defendant by counsel unless defendant has waived his rights to appear and defend in person and with counsel by requesting the court in writing to proceed as provided in section 1203.2a. A judgment pronounced in absence of such request and waiver is violative of the defendant's constitutional rights to have the assistance of and to be personally present with counsel (Cal. Const., art I, § 13) and is accordingly void (*In re Perez* (1966) 65 Cal.2d 224, 229 [53 Cal.Rptr. 414, 418 P.2d 6]).

Thus, it can be seen that the failure of the probation officer to report to the court the place of defendant's confinement is of no significance in relation to the jurisdictional issue raised herein and furthermore resulted in absolutely no prejudice to the defendant.

In similar manner the failure of the trial court timely to comply with a proper notice and request made under section 1381 may also deprive it of jurisdiction. That section provides in pertinent part: "Whenever a defendant has been convicted, in any court of this state . . . and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and at the time of the entry upon such term of imprisonment . . . there is pending, in any court of this state . . . any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which such matters are pending shall bring the same defendant . . . for sentencing within 90 days after such person shall have delivered to said district attorney written notice of the

place of his imprisonment . . . and his desire to be brought . . . for sentencing . . . . In the event that the defendant is not brought . . . for sentencing within the 90 days as herein provided the court in which such . . . sentencing is pending must, on motion or suggestion . . . of the defendant . . . or his counsel . . . dismiss such action."

During the period that the imposition of judgment and sentence is suspended a defendant "remains to be sentenced" within the contemplation of section 1381. (*Rudman* v. *Superior Court* (1973) 36 Cal.App.3d 22, 27 [111 Cal.Rptr. 249].) The statutory requirement that defendant make a demand for sentencing does not violate due process and is not in conflict with the constitutional guarantee of a speedy trial (*People* v. *Robinson* (1968) 266 Cal.App.2d 261, 265 [72 Cal.Rptr. 33]), nor is there anything unreasonable in the requirement for a demand (*People* v. *Godlewski* (1943) 22 Cal.2d 677, 684 [140 P.2d 381]).

Here defendant's letter of December 14, 1972, did not comply with the statute in that it was neither directed to nor delivered to the district attorney. Defendant asserts, however, that his letter was constructively delivered to the district attorney in that he complied with section 1203.2, subdivision (b), by giving notice to the probation officer who then, it is claimed, had a responsibility to notify both the court and the district attorney of his demand. However, that section imposes no such obligation on the probation officer.[3] It merely confers on a probationer (as well as the district attorney) standing to move the court for modification, revocation or termination of probation and requires the petition to be addressed to the court with notice thereof to the probation officer. The response thereto is a matter confided to the discretion of the court exercised in accord with the interests of justice. The effect assigned to the section by defendant is erroneous and his reliance thereon is misplaced.

Had defendant's letter of December 14, 1972, complied with section

---

[3]Section 1203.2, subdivision (b), provides as follows: "Upon its own motion or upon the petition of the probationer or the district attorney of the county in which the probationer is supervised, the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision. The court shall give notice of its motion, and the district attorney shall give notice of his petition to the probationer and the probation officer; and the probationer shall give notice of his petition to the probation officer. The court shall refer its motion or the petition to the probation officer. After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require.

"The notice required by this subdivision may be given to the probationer upon his first court appearance in such proceeding."

1381 so as to start the 90-day period running as of the date of its delivery, the trial court would have had no alternative at the revocation hearing than to dismiss the action since the 90 days had run approximately five months prior to defendant's first appearance on the violation on August 23, 1973. Such a result would forever bar the People from asserting its full remedy against defendant since the three-year period of limitations (§ 800) for the underlying offense expired in January 1973. Fundamental precepts of fairness dictate that before defendant's standing to invoke such a drastic sanction is recognized he must first demonstrate literal compliance with the remedial provision by which he seeks to benefit. Any other rule would encourage resort to half-hearted, disingenuous gestures toward compliance calculated at most to start the 90-day period running and contrived in fact to achieve official default.

For the reasons hereinbefore expressed, we hold that neither sections 1203.2a nor 1381 operated in the factual context of this case to deprive the trial court of jurisdiction.

Defendant contends that even though he may not have complied with the requirements of sections 1203.2a and 1381 in a technical sense, his efforts to do so constituted a good faith effort to comply made in accordance with and in justifiable reliance upon advice given him by state agents. Defendant claims that the delay between demand and hearing is attributable to erroneous advice of state agents which, coupled with the unreasonable length of the delay, operates to deprive the court of jurisdiction.

To support this contention defendant relies on the language of *In re Brown* referred to above, that "it is not improper to preserve the jurisdiction of the court until it has been ousted by strict compliance with the terms of the statute, or until such time as the defendant has been prejudiced by errors or omissions of some agent of the state." (19 Cal.App.3d at p. 666.) However, the foregoing statement simply has no application to this case. At the hearing defendant stated to the court that in preparing the letter of December 14, 1972, he followed the instructions of two counselors at the state prison. The trial court then observed that defendant was not under oath and that "I would like some proof from the people involved." Defendant requested a week's continuance to subpena the people who allegedly advised him. At the continued hearing five days later, defendant's attorney orally advised the court that the two counselors at the state prison had been contacted and that one of them if called would testify that "the only form they have available at [the prison] is a standard form."

Defendant did not request additional time to marshal evidence and no further showing was made.

"Proof" is made by evidence (Evid. Code, § 190). Evidence means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact. (Evid. Code, § 140.) Testimony is received through witnesses. A witness is a person whose declaration under oath is received as evidence for any purpose whether such declaration be made on oral examination or by deposition or by affidavit. (Code Civ. Proc., § 1878.) Statements of counsel not under oath or by way of stipulation or by way of admission are not evidence. (*Mills* v. *Vista Pools, Inc.* (1960) 184 Cal.App.2d 668, 672 [7 Cal.Rptr. 545].) The same is true of statements of the defendant not under oath. In short, there is no proof that defendant was advised by or relied upon any agent of the state in the preparation of his demand. Where defendant relies on claimed errors or omissions of state agents to support his jurisdictional argument it is incumbent upon him to produce evidence on the issue sufficient to avoid an adverse ruling. (Evid. Code, § 110.) This he failed to do.

Defendant's final contention is that the nine-month delay between the Santa Clara County conviction, which constituted the violation, and the revocation hearing deprived him of due process of law. Defendant points to the request for revocation filed by the probation officer with the court and the subsequent placing of a hold against him as demonstrating a sufficiency of information in the authorities to require reasonably prompt action even without a demand therefor by defendant.

The rights of parolees and probationers whose conditional liberty the state threatens to terminate have frequently commanded the attention of the courts since the decision in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]. In that case the United States Supreme Court spelled out the minimum requirements of due process in parole revocation proceedings. They include a preliminary or probable cause hearing[4] to determine if there is sufficient evidence of violation to warrant detention of the parolee pending final determination of the charge. The probable cause hearing is to be "conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." (*Mor-*

---

[4]To avoid confusion between the statutory preliminary hearing prerequisite to charging by information and the preliminary hearing required by *Morrissey*, the latter is referred to herein as a "probable cause" hearing.

*rissey* v. *Brewer, supra,* at p. 485 [33 L.Ed.2d at p. 496].) The final decision is to be made at a revocation hearing which "must be tendered within a reasonable time after the parolee has been taken into custody." It is suggested that a lapse of two months is not unreasonable. (*Morrissey* v. *Brewer, supra,* at p. 488 [33 L.Ed.2d at p. 498].)

*Morrissey* is "equally applicable in the case of a revocation of probation insofar as it assures that revocation can be had only with due process protections. However, the precise nature of the proceedings for such revocation need not be identical if they assure equivalent due process safeguards. ¶ The most obvious procedural distinction between probation revocation proceedings in this state and those discussed in *Morrissey* is that the former is not an administrative but is a judicial act as provided in section 1203.2." (*People* v. *Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].)

The trial court conducted a series of hearings commencing with defendant's first appearance on the charge of violation and culminating in the proceeding of September 12, 1973, at which probation was revoked and defendant sentenced to state prison. Virtually all of the proceedings leading up to that of September 12 were devoted to discussion of authorities and argument of counsel on the jurisdictional challenge raised by defendant. It was not until the proceeding of September 12 that the court received any evidence of defendant's violation of probation and that consisted of a certified copy of the abstract of judgment and commitment to prison from Santa Clara County. No part of the hearings was devoted to an inquiry into the existence of probable cause to detain defendant pending final decision. In short, the court did not conduct a probable cause hearing separate and distinct from the revocation hearing.

Defendant does not make issue of the failure to hold a separate probable cause hearing. However, it is necessary to consider this apparent procedural hiatus before addressing directly the question of delay.

It has been said that a separate *Morrissey* probable cause hearing need not be held where the alleged act constituting a violation of parole is charged independently as a felony. The procedural protections afforded one charged with felony such as the preliminary hearing, designed to weed out groundless charges, are regarded as adequate protection of the interests served by the *Morrissey* probable cause hearing, i.e., protection from arbitrary deprivation of liberty pending final determination, if the parolee, as required by due process, is given fair notice in advance of the nature and effect of the hearing intended to serve such a dual purpose. (*In re Law* (1973) 10 Cal.3d 21, 28 [109 Cal.Rptr. 573, 513 P.2d 621].)

The record before us contains sparse information about the proceedings in which defendant was convicted in Santa Clara County. It does not appear whether or not defendant was proceeded against by indictment or information and if the latter, whether there was a preliminary hearing. All that appears is that defendant was convicted by jury on November 21, 1972, of multiple counts of felony.[5] Manifestly a jury verdict of guilt is more probative on the *Morrissey* probable cause issue than a magistrate's holding order. Moreover, issues concluded in a plenary trial cannot be relitigated in another forum. (*Morrissey* v. *Brewer, supra*, 408 U.S. at p. 490 [33 L.Ed.2d at p. 499]; *In re Scott* (1973) 32 Cal.App.3d 124, 128 [108 Cal.Rptr. 49].)

*Vickers* ascribes to the probable cause hearing the function of determining if there is sufficient evidence of violation to warrant detention of a probationer until a more formal hearing is had (*People* v. *Vickers, supra*, 8 Cal.3d at p. 458) and suggests that the probable cause and revocation hearings may be held "in close or immediate sequence to each other" providing that due process provisions are not infringed. (*Id.* at p. 459, fn. 8.)

Defendant's acknowledged interest in continuing at liberty was not at stake in these proceedings. From the placing of the hold upon defendant until the revocation of probation defendant was continually in custody as a result of the Santa Clara charges and conviction. Under these circumstances a discrete, identifiable probable cause hearing would have contributed nothing to the protection of the probationer's interest in remaining at liberty since he had already been deprived of his liberty in an unrelated proceeding in another forum. Such a hearing would thus serve only to cumber the machinery of the administration of justice to no useful purpose. (*In re Scott, supra*, 32 Cal.App.3d 124, 128.)

The proceedings of August 23 through September 12 in effect amounted to a simultaneous probable cause and final hearing. The documentary evidence of violation was uncontradicted and clearly was sufficient to support both a finding of probable cause to detain and of violation of probation. Under the broad guidelines set forth in *Vickers*, such a procedure would appear to conform with the requirements of that case. (*People* v. *Calais* (1974) 37 Cal.App.3d 898, 902 [112 Cal.Rptr. 685].) ▮ The interests served by the probable cause hearing required by *Morrissey* were more than adequately protected by the proceedings in this case.

---

[5]The abstract of judgment and commitment were received in evidence by the trial court but are not part of the record on appeal.

Finally, we turn to a consideration of the effect of delay upon defendant's right to due process of law. There have been no cases called to our attention involving delay in probation revocation proceedings and there are no statutory guidelines to assist in determining the reasonableness of such a period of delay. Accordingly we must refer to cases which, while arising in a different procedural context, address the issue of claimed denial of due process resulting from delay. Referring to alleged unconstitutional delay between offense and arrest, our Supreme Court declared that "a claimed denial of due process would be decided by . . . balancing the effect of the delay on the defendant against any justification for the delay." (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 741, fn. 1 [91 Cal.Rptr. 578, 478 P.2d 10].) And in *People* v. *Archerd* (1970) 3 Cal.3d 615, at page 640 [91 Cal.Rptr. 397, 477 P.2d 421], involving preindictment delay, it was said "The delay must be purposeful, oppressive, and even 'smack of deliberate obstruction on the part of the government,' before relief will be granted. [Citations.]"

■ The record here does not support an inference that the delay was purposeful or oppressive or deliberately obstructive. At worst it may be attributed to bureaucratic inefficiency, characterized most accurately as nonfeasance rather than malfeasance, although unfortunately not altogether uncommon among criminal justice agencies charged with administering a burgeoning case load. For all practical purposes the effect of the delay upon defendant, if not inconsequential, constituted at most a minor burden. Pending the probation hearing he was in custody, not under the process of the probation court but as a result of an independent proceeding. Defendant presented no evidence to refute or mitigate the charge of violation, nor does he claim that his ability to defend against the charge has in any way been impaired by delay. Moreover, the trial court ran the sentence concurrently with the term then being served and gave defendant credit for time served from 60 days after December 14, the date of defendant's demand "for hearing within 60 days or dismissal." In effect, defendant was accorded by the trial court substantially the same benefits of concurrency as if his demand for hearing had met the requirements of either sections 1203.2a or 1381 and had been timely acted upon by the trial court. In point of fact the form of the sentence constituted a literal accession to his demand. Defendant has shown no prejudice as a result of delay nor does any appear in the record.

What was said in *United States* v. *Marion* (1971) 404 U.S. 307, 325-326 [30 L.Ed.2d 468, 481-482, 92 S.Ct. 455], involving a claim of prejudicial preindictment delay, is equally applicable here and is disposi-

tive of defendant's due process contention: "No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over [defendants] or to harass them. [Defendants] rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost." Absent a demonstration of actual prejudice, the court concluded that defendants' due process claim was speculative. We reach the same conclusion here.

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.