[Civ. No. 40265. Second Dist., Div. Two. Feb. 9, 1973.]

RALPH WILLIAMS FORD, Plaintiff and Respondent, v.
NEW CAR DEALERS POLICY AND APPEALS BOARD et al.,
Defendant and Appellants.

## COUNSEL

Evelle J. Younger, Attorney General, and Alan Hager, Deputy Attorney General, for Defendants and Appellants.

Linder, Schurmer, Drane & Bullis and Ellis J. Horvitz, for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—The New Car Dealers Policy and Appeals Board, pursuant to its authority under Vehicle Code sections 3050 to 3057, affirmed a decision of the Director of Motor Vehicles finding that Ralph Williams Ford (Williams) on three specified occasions in 1968 violated Vehicle Code, section 4456, and on nine specified occasions in 1968 violated Vehicle Code, section 11713, subdivision (g).[1] The board, separately for each

---

[1]Vehicle Code section 4456 in pertinent part authorizes the dealer to issue a temporary identification device to the purchaser, provided the dealer applies to the

group of violations, revoked Williams' dealer's license, certificate, and special plates; stayed the revocation; and placed Williams on a three-year probation whose conditions included a 10-day suspension of its dealer licensing privileges.

The superior court confirmed the board's findings with respect to the violations but ordered the cause remanded to the board for reconsideration because in the court's view the board, (1) wrongfully imposed administrative penalties for violations of section 4456, (2) violated due process of law in finding Williams guilty of uncharged violations, and (3) imposed improper procedural terms for future revocation of probation.

The board and the department appeal the judgment.

*1. Section 4456.*

The board found that on three occasions Williams violated section 4456 by failing to file timely reports of sale and documents and fees for the transfer or registration of vehicles. The board noted that these violations represented only a small part of the untimely reports of sale submitted by Williams. The superior court, on an independent review of the evidence pursuant to Code of Civil Procedure, section 1094.5, confirmed the findings of the board, but concluded that the $3 forfeiture imposed by section 4456 (now by § 4456.5) was the sole penalty applicable to these violations, and therefore administrative penalties of suspension and revocation were not authorized.

We disagree with the conclusion of the superior court that the penalty for these 1968 violations was limited to a $3 forfeiture, since at that time administrative penalties authorized by section 11705 were clearly applicable to such violations.[2] (See *Evilsizor* v. *Dept. of Motor Vehicles* (1967) 251 Cal.App.2d 216, 218-220 [59 Cal.Rptr. 375].) Not until 1970 did the Legislature enact section 4456.5 to limit the penalty for certain violations of section 4456 to a $3 forfeiture. Williams argues that the changes brought

department on behalf of the purchaser for registration or transfer of the vehicle within 20 days of sale.

Vehicle Code section 11713, subdivision (g) makes it unlawful and a violation of the Vehicle Code for a license holder to include as an added cost to the selling price of a vehicle an amount for licensing or transfer of title which is not owed to the state, unless the amount has been paid by the dealer prior to the sale.

[2]Vehicle Code section 11705 (now renumbered § 11705, subds. (a)(7) and (a)(9)) provides that the department after notice and hearing may suspend or revoke a dealer's license upon determining that the dealer has violated one or more of the terms and provisions of those parts of the Vehicle Code that include sections 4456 and 11713, subdivision (g).

about by the enactment of section 4456.5 in 1970 should be used to reinterpret the intent of the Legislature in enacting the earlier texts of section 4456 in 1959, 1961, and 1963. We decline this invitation to embark on a voyage of retrospective reinterpretation.

Williams also contends that because the subsequently enacted section 4456.5 reduced in certain instances the penalties for violation of section 4456, the section should be applied retroactively by the courts to the violations that occurred in this case. We do not agree. It is presumed that legislative changes do not apply retroactively unless there is a clear legislative intent that they should do so. (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control*, 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735].) Had the Legislature merely mitigated the penalty for a violation of section 4456 we might well conclude it had made an express determination that its former penalty had been too severe and that a lesser penalty would be more appropriate. (See *In re Estrada*, 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948].) But in adopting section 4456.5 the Legislature enacted a new, comprehensive scheme which completely revised the scope of the penalties attached to violations of section 4456. The basic penalty for violation of section 4456 is made a $3 forfeiture, but failure to pay fees to the department within 20 days continues subject to the penalty of suspension and revocation. And failure to present a proper application in compliance with section 4456 within 40 days creates a presumption of failure or neglect that provides prima facie grounds for suspension and revocation under section 11705.

We do not believe the Legislature could have reasonably intended these complex changes to be applied retroactively to cases, such as this one, that had reached final administrative decision prior to the effective date of the new law. As the court said in *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control, supra,* at page 372: "The Legislature's alteration of the method for enforcement of a statute, however, ordinarily reflects its decision that the revised method will work greater future deterrence and achieve greater administrative efficiency. Yet the design for efficacy of deterrence and efficiency of administration hardly affects the case which has already reached a final administrative decision based upon the old procedure."

*2. Uncharged Violations.*

█ The board adopted the findings of the Director of Motor Vehicles relating to the accounting procedures used by Williams before and after the filing of the accusation of registration-fee overcharges. Key findings included:

"XI 3(d). . . . Respondent did not maintain any journals, subsidiary ledgers or any other type of accounting records wherein it could be ascertained the name of the purchaser, the amount of money deposited by said purchaser for payment to the Department, the actual amount of money required by the Department and the dates and amount of the refund of the overcharge to said purchaser. . . .

"(e). Respondent's employees on the managerial level, including the certified public accountant auditor, knew that the deposits made by purchasers for the fees due the Department, were fiduciary moneys requiring the highest degree of accountability. . . .

"(f). At the end of respondent's 1968 accounting period, the expense account to which respondent credited the refunds from the Department had a credit balance of $16,570.03 . . .

"(g). With one exception, respondent did not refund the excess deposit fees to purchasers identified in Finding X hereof until subsequent to the service of the Accusation."

The superior court concluded that these findings "concern[ed] matters not charged in the Accusation, and the implied finding that there was a $16,570.03 credit balance from overcharged fees that had not been refunded or credited to the accounts of customers to whom they belonged, is not within the scope of any charge alleged in the Accusation. [These findings] were improperly considered by the Board in determining the nature and extent of the penalty . . ."

In our view the superior court misconstrued the relationship between charges and findings in the administrative proceedings. The board did not find that Williams committed any violations other than those charged in the accusation. Williams produced evidence of its accounting procedures in an attempt to show it had not made the overcharges set forth in the accusation. In response to that evidence the board made findings which showed that it did not credit the evidence produced by Williams to rebut proof of overcharges, and that Williams' accounting procedures were inadequate to disclose what refunds, if any, were routinely made to overcharged purchasers. The board's basic finding that on nine occasions the price of vehicles sold by Williams included as an added cost specified licensing or transfer fees not owed to the state (Veh. Code, § 11713, subd. (g)) remained unaffected by additional findings on the subject of Williams' accounting procedures. These additional findings, however, were pertinent to questions of due care, penalty, and conditions of probation. Once the board found the charged violations had taken place, it was entitled to consider related deficiencies in order to evaluate the amount of due care exercised by Williams

in past attempts to comply with the statute and in order to determine what administrative penalty and what conditions of probation would be suitable. (*Mills* v. *State Bar,* 6 Cal.2d 565, 567 [58 P.2d 1273].) Evidence of other possible violations need not be disregarded by the board in arriving at an appropriate penalty and appropriate conditions of probation, merely because that evidence was produced by Williams.

*In re Ruffalo,* 390 U.S. 544 [20 L.Ed.2d 117, 88 S.Ct. 1222], and related cases are not controlling. In *Ruffalo,* an attorney was disbarred from the practice of law on a finding he was guilty of an instance of misconduct that had not been charged against him in the disbarment proceedings until after he had presented evidence to rebut the instances of misconduct with which he had been initially charged. The court overturned the disbarment on the ground that procedural due process requires fair notice of a charge before proceedings commence. (390 U.S. at pp. 550-551 [20 L.Ed.2d at pp. 121-123].) At bench Williams was given fair notice of the nine charged violations it was found to have committed. Other potential violations and related deficiencies were considered only in connection with a determination of the type and extent of the sanction to be imposed for the charged violations.

### 3. Condition of Probation.

A condition of probation imposed by the board on Williams stated: "Should the Director of Motor Vehicles at any time during the existence of said probationary period determine upon reliable evidence that appellant has violated any of the terms and conditions of probation, he may, in his discretion and *without a hearing,* revoke said probation and order the suspension or revocation of appellant's license, certificate and special plates . . . ." (Italics added.)

The superior court properly concluded that the italicized portion of this condition of probation violated due process of law. The Fourteenth Amendment protects the pursuit of one's profession from abridgment by arbitrary state action, and a state cannot exclude a person from any occupation in a manner or for reasons that contravene due process of law. (*Endler* v. *Schutzbank,* 68 Cal.2d 162, 169-170 [65 Cal.Rptr. 297, 436 P.2d 297].) Here, the revocation of probation, and therefore the revocation of Williams' dealer's license, is left to the discretion of the Director of Motor Vehicles. But "an individual must be afforded notice and an opportunity for a hearing before he is deprived of any significant property interest, . . ." (*Randone* v. *Appellate Department,* 5 Cal.3d 536, 541 [96 Cal.Rptr. 709, 488 P.2d 13].) Although Williams received notice and a hearing on its past

violations, the conditions of probation dispense with notice and hearing on any future violations that may bring about a revocation of its license.

██ In criminal law "fundamental principles of due process and fair play demand, . . . that after a summary revocation of probation and before sentencing a hearing is required at which the defendant is entitled to be represented by counsel, to be advised of the alleged violation and given an opportunity to deny or explain it, and, if necessary, present witnesses on his own behalf." (*People* v. *Youngs,* 23 Cal.App.3d 180, 188 [99 Cal.Rptr. 101]; *People* v. *Vickers,* 8 Cal.3d 451, 458-461 [105 Cal.Rptr. 305, 503 P.2d 313]; see also, *Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) Due process requires a comparable opportunity for notice and hearing on the revocation of an occupational license. (Cf. *Goldberg* v. *Kelly,* 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011].)

The judgment granting the writ of mandate is reversed, and the cause is remanded to the superior court with instructions to issue its writ for the sole purpose of directing the board to strike from page 32 of its final order the phrase "without a hearing" and substitute therefor the phrase "on notice and hearing." Appellants to receive their costs on appeal.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 8, 1973, and respondent's petition for a hearing by the Supreme Court was denied April 4, 1973. Clark, J., did not participate therein.