Filed 6/13/16  P. v. Almanza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042190 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS141131) |
| v. | |
| RAMON ALVAREZ ALMANZA, | |
| Defendant and Appellant. | |

Defendant was placed on probation after entering no contest pleas to evading a peace officer and driving under the influence of alcohol.  After defendant admitted probation violations, probation was revoked and he was sentenced to the upper term of three years on the evading charge.  Defendant challenges the revocation and sentence as not supported by substantial evidence.  Finding no error, we will affirm.

## I.  BACKGROUND

### A.  UNDERLYING CHARGES

On May 5, 2014, defendant was arrested after leading police on a high-speed chase on Highway 101 in Monterey County.  Defendant was charged with evading a peace officer while operating a motor vehicle with willful or wanton disregard for safety (Veh. Code, § 2800.2, subd. (a); count 1, a felony); driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 2, a misdemeanor); driving with a blood alcohol level of .08 percent or higher.  (Veh. Code, § 23152, subd. (b); count 3, a misdemeanor);

driving on a suspended license (Veh. Code, § 14601.2, subd. (a); count 4, a misdemeanor); and speeding (Veh. Code, § 22350; count 5, an infraction).

The arresting officer, a Monterey County Sheriff's sergeant, testified at the preliminary hearing that he encountered defendant in his car on the side of Highway 101 after receiving a broadcast that a possible drunk driver had pulled off the highway. The sergeant stopped behind defendant's car and as he approached on foot, defendant drove back onto the highway. The sergeant followed, observing erratic driving. He turned on his lights and siren to initiate a traffic stop, but defendant did not stop. Defendant slowed and pulled to the side of the road two or three times, but sped away each time the sergeant pulled in behind him. Defendant accelerated to 90 miles per hour, and continued to drive erratically in afternoon traffic for several miles, endangering other drivers. Maintaining his high speed, defendant passed between two vehicles driving in adjacent lanes, and avoided causing a three-car collision only because one of the other drivers took evasive action.

Sheriff's deputies joined the pursuit, which ended when defendant pulled into a gas station and was arrested. Defendant got out of his car slowly. He had trouble walking and leaned against the car. He refused the officers' commands, his eyes were bloodshot and glassy, his speech was slurred, and he smelled of alcohol. After being placed in the sergeant's car, defendant appeared to pass in and out of consciousness. Defendant refused a breath test but submitted to a blood test. Deputies found an open can of hard lemonade in defendant's center console cup holder. Deputies also found an empty can of hard lemonade and an unopened beer in the car. The parties stipulated that defendant was driving when his driving privilege had been suspended under Vehicle Code section 14601.2.[1]

_____

[1] Vehicle Code section 14601.2 prohibits a person from driving a motor vehicle when his or her driving privileges are suspended for a driving under the influence conviction.

2

Defendant was held to answer all charges, except the charge that he had driven with a .08 percent or higher blood alcohol level. (Veh. Code, § 23152, subd. (b).) The blood test results were not available at the preliminary hearing, and the court sustained defendant's objection to a highway patrol officer providing opinion testimony as to defendant's blood alcohol level. Defendant later pleaded no contest to the felony evading charge and to driving under the influence, on the condition that he receive felony probation with up to one year in jail as a condition of that probation.

When interviewed by a probation officer, defendant stated that he lived in Santa Rosa with his sister. On the day of the offense, he drove to Santa Barbara to reconcile with his wife, who had been ill. He had an "alcohol energy drink" with his lunch in Gilroy, but did not feel impaired. He attributed any signs of intoxication to the interaction of that beverage with his type 2 diabetes. He drove away from the sergeant when first approached because the officer had not activated his lights. Defendant did not remember whether the sergeant ever activated his lights, but then he said he figured the lights were for another car in front of him. He denied having any alcohol in his car.

The probation officer assessed defendant as having "engaged in extremely dangerous and potentially lethal criminal behaviors." The assessment continued: "[Defendant] not only chose to operate a vehicle while intoxicated, but then chose to flee from Sheriff's deputies and repeatedly attempted to elude them by feigning yielding. At one point, the defendant nearly collided with the vehicles of two innocent motorists who would have likely suffered significant injuries or death had they not had the ability to move out of the way and off the road. Although the defendant has partially accepted responsibility for his actions, stating that the instant offense was a 'mistake,' he refuted several of the details of the offense, including his level of intoxication, and displayed a clear denial of a very apparent alcohol abuse issue." The probation officer considered defendant's conduct to constitute aggravating circumstances under California Rules of Court, rule 4.421(a)(1) (a crime involving threat of great bodily harm) and

3

rule 4.421(b)(1) (violent conduct indicating a serious danger to society). Still, consistent with the plea agreement, he recommended felony probation with alcohol restrictions and treatment.

At the August 2014 sentencing hearing, the court referred to a .24 blood alcohol level as it sought clarification of defendant's criminal history. The probation officer's report had noted "no prior criminal history." But according to the arresting officer's report, defendant was driving on a suspended license and had three warrants for driving under the influence charges. The court asked "So, where is that? Because that – that, and a .24, would make a big difference to the Court."[2] The prosecutor also commented about one energy drink "get[ting] to a .24," reasoning that defendant was "somebody who's inexperienced at misleading the Court, makes up stories that are incredible." Defendant's attorney also referenced defendant's blood alcohol level at the sentencing hearing. In challenging the probation officer's impression that defendant was not accountable for his conduct, defendant's attorney explained: "The fact that he doesn't admit to some of the evidence in the case I don't think reflects his lack of accountability as much as his lack of recall, given the alcohol level, the things that were going on [in] his personal life with his family, and his diabetic condition at the time." The court's copy of the probation report contained hand-written marginalia, which on appeal defendant attributes to the trial judge, including the notation, "What's B.A.? .24."

The trial court suspended imposition of sentence for five years and placed defendant on formal probation with conditions including reporting to probation

---

[2] Referencing defendant's rap sheet, the prosecutor explained the suspended license may have been related to a 1997 driving under the influence conviction "which would have dropped off after ten years, although the suspended license may not have." The prosecutor also noted a 2003 driving under the influence charge with a prior. The court responded: "So, there is no prior record, his license is suspended, and this is his first DUI? That's how we're looking at this?" The prosecutor replied, "That's one view."

4

immediately upon release from custody, not changing his residence from Sonoma County without the probation officer's permission, reporting any change of residence, address, or phone number within 24 hours, not possessing or consuming illegal drugs or alcohol, completing an alcohol treatment program, and obeying all laws. The remaining counts were dismissed.

## B. THE PROBATION VIOLATIONS

In October 2014, the probation department petitioned under Penal Code section 1203.2 to modify defendant's probation. The petition stated that defendant had failed to report to probation upon his release from jail and had failed to report a phone number change. The clerk sent a notice of probation violation hearing to defendant at his last known address. Defendant failed to appear at that hearing, his probation was summarily revoked, and a bench warrant was issued.

In February 2015, the probation department filed an amended probation violation petition, adding that defendant had further violated his probation by possessing marijuana and methamphetamine on January 12, 2015 in Lompoc. Defendant was arrested for the drug offenses and on outstanding warrants from Monterey and Napa counties. At a formal hearing, defendant admitted the violations contained in both petitions, and the matter was set for sentencing.

According to the supplemental probation report, the Monterey County jail had released defendant to Napa County in August 2014, and in October the probation officer had learned that defendant was no longer in custody in Napa. The probation officer attempted to contact defendant by mail and phone, but neither the address nor phone number defendant had provided were valid. Defendant told the probation officer that he had not reported to probation after his release from jail because he did not have any contact information. He drove to Santa Barbara to be with his wife, and although he drove through Monterey County, he did not have any money to stop or call probation.

5

His wife called the Public Defender's office and probation, but she was not given the probation officer's name or contact information.

Defendant provided the probation officer with a Lompoc address different from the address he had given the Lompoc police when he was arrested. He gave the probation officer his wife's number to confirm that address, but the person who answered at that number did not know defendant. Defendant denied using drugs, claiming someone had just given him the drugs in January, saying "Here! Try it!" Yet he pleaded to the January drug possession charges in Santa Barbara County and was ordered to serve three years supervised probation under Proposition 36. In the probation officer's view, defendant had demonstrated an unwillingness to cooperate with probation, and he recommended that sentence be imposed.

In April 2015, the court formally revoked and terminated defendant's probation and sentenced him to the upper term of three years on count 1, with 345 days custody credit. Defendant received a concurrent 180-day sentence on count 2, with credit for time served. Defendant argued for reinstatement of probation, characterizing his noncompliance as "a mix of misunderstandings." He pressed that the Napa County warrant was for an old driving under the influence case, he had never been on formal felony probation, he had been living with his wife in Lompoc, and he had provided his attorney with his wife's phone number which was "off by two" from the number probation had called. Defendant was ready to undertake the Proposition 36 drug program in Lompoc, and he asked the court for the opportunity to complete that program and demonstrate compliance.

Rejecting defendant's request, the court commented "in reviewing both [probation] reports, the court does question the defendant's ability to tell the truth, at the time he's contacted by officers, during probation officers [*sic*], or any other time. [¶] Based upon the defendant's conduct, based upon his poor performance on probation, I find that he's no longer amenable to probation. [¶] In reviewing the facts and

6

circumstances of the underlying offense, I do note defendant's blood alcohol was a .24 when he went on a 2800.2. That was very dangerous and could have resulted in the loss of life. [¶] Accordingly, due to the extreme dangerousness of this case, in this matter, probation is revoked as to Count I. Court's going to impose the upper term of three years." The hearing concluded after defendant's attorney argued for the middle term on count 1, minimizing the duration and speed of the freeway chase and pressing that defendant had an insignificant criminal record, had never been on felony probation, and took early responsibility for his actions.

## II.  DISCUSSION

### A.    STANDARDS OF REVIEW

Penal Code section 1203, subdivision (a) authorizes a court to revoke and terminate probation "if the interests of justice so require and the court, in its judgment, has reason to believe … that the person has violated any of the conditions of his or her [probation] … or has subsequently committed other offenses[.]"  Revocation of probation is within the sound discretion of the trial court. (*People v. Pinon* (1973) 35 Cal.App.3d 120, 123, fn. 4.)  We will not disturb the court's discretion to revoke and terminate probation absent a showing of abusive or arbitrary action. (*People v. Silva* (1966) 241 Cal.App.2d 80, 84.)

When the trial court pronounces judgment after revoking and terminating probation, it exercises its discretion to impose a lower, middle, or upper term for each felony count. (Pen. Code, §§ 1170, 1203.2, subd. (c); Cal. Rules of Court, rule 4.420(a).)  The sentencing court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).)  It must then state the reasons for its selection on the record. (*Id*., subd. (e).)  "The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation and mitigation, and any evidence introduced at the sentencing hearing."

7

(*Id*., rule 4.420(b).) A trial court abuses its sentencing discretion when it relies on circumstances that constitute an improper basis for decision. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[A] trial court's reasons for its sentencing choice are upheld if 'supported by available, appropriate, relevant evidence.' [Citations]." (*People v. Black* (2007) 41 Cal.4th 799, 818, fn. 7.)

## B. DEFENDANT'S ARGUMENT

Defendant argues that the trial court violated his due process rights by revoking his probation based on factual findings not supported by substantial evidence. He contends that the court based its refusal to reinstate probation "on the 'fact' that 'defendant's blood alcohol was a .24 when he went on a 2800.2,' " and that "no competent evidence supported the court's factual finding that [defendant] was 'extremely dangerous' because his BAC was .24 during the underlying offense." He argues that the court's handwritten notes cannot be evidence of a fact that was "never adjudicated, admitted, or presented in the form of competent evidence."

### 1. Probation Revocation Challenge

Defendant conflates the trial court's decision to revoke and terminate probation with its separate decision to sentence defendant to the upper term on count 1. Defendant's probation was summarily revoked, entitling him to a hearing on the validity of that revocation, i.e., whether he violated the terms of probation. (*People v. Youngs* (1972) 23 Cal.App.3d 180, 188.) Here, defendant *admitted* the violations in full. That admission constituted proof of multiple probation violations, and was sufficient to support the probation revocation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 446.) We find no abuse of discretion in the court's decision to revoke and terminate defendant's probation based on defendant's poor performance on probation.

8

### 2. Sentencing Challenge

#### a. Forfeiture

The Attorney General argues that defendant forfeited his sentencing challenge under *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*) by not raising his concern in the trial court. In *Scott*, the California Supreme Court held that the waiver doctrine will apply "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices," reasoning that "[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Id.* at p. 353). Thus, when a defendant has "a meaningful opportunity to object," he forfeits his right to complain on appeal. (*Id.* at p. 356.) Defendant counters that sufficiency of the evidence issues are never waived, citing *People v. Neal* (1993) 19 Cal.App.4th 1114 (*Neal*), which stated that forfeiture would not apply to an insufficient evidence challenge to the imposition of consecutive sentences. (*Id.* at p. 1117, fn. 2.)

Although defendant cast his challenge as a sufficiency of the evidence claim, his argument is not that his blood alcohol level is insufficient to support the trial court's sentencing determination. (See *People v. Panah* (2005) 35 Cal.4th 395, 476 [" 'evidence received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding.' "].) Rather, defendant disputes the trial court's consideration of defendant's blood alcohol level in its discretionary sentencing determination. As observed by both the *Scott* and *Neal* courts, that type of evidentiary dispute is subject to forfeiture because it could have been resolved if brought to the trial court's attention. (*Scott*, *supra*, 9 Cal.4th at p. 353; *Neal*, *supra*, 19 Cal.App.4th at p. 1118.) Defendant's contention is analogous to the forfeited sentencing claims noted in *Neal*, and cited with approval in *Scott*, such as a claim that the sentencing court erred by considering a defendant's statement to a probation officer or a victim's statement, or a claim that the probation report contained errors. (*Neal*, at pp. 1123–1124, citing *People v. Santana* (1982) 134 Cal.App.3d 773, 785, *People v.*

9

*Jones* (1992) 10 Cal.App.4th 1566, 1574, and *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 724–725; *Scott*, at p. 352, fn. 15.)

Defendant argues that his challenge can be raised in the first instance on appeal under *People v. Butler* (2003) 31 Cal.4th 1119 and *People v. Viray* (2005) 134 Cal.App.4th 1186. In *Butler*, the Supreme Court held that a defendant may challenge for the first time on appeal the probable cause finding required to support an HIV testing order for persons convicted of certain sex offenses. (*Butler*, at p. 1126.) *Viray* involved a substantial evidence challenge to an order requiring the defendant to reimburse the county for public defender's services. (*Viray*, at p. 1213.) Citing *Butler*, the *Viray* court observed that the sufficiency challenge required no predicate objection in the trial court. (*Id.* at p. 1217.)

In our view, defendant's challenge falls under *Scott* and *Neal*, not *Butler* and *Viray*. In *Butler* the trial court was required by statute to make a probable cause finding to support the HIV testing order (*Butler*, *supra*, 31 Cal.4th at p. 1125), and probable cause findings are subject to appellate review. (See Pen. Code, § 999a.) Further, although that order was made in connection with sentencing, it is a stand-alone inquiry separate from a discretionary sentencing determination. The *Butler* court made clear that its decision was driven by the specific terms of the HIV testing statute and should not be construed to undermine the *Scott* forfeiture rule. (*Butler* at p. 1128, fn. 5.) Similarly, the forfeiture issue in *Viray* turned on the conflict inherent in expecting appointed counsel to object to an order for statutory fees; it was not a challenge to the sentencing court's determination, much less a challenge over disputed evidence. We recognize that defendant presents a factually driven challenge to the trial court's statement of reasons for selecting the upper term on count 1. But regardless of how he frames the issue, defendant's contention remains a challenge to the trial court's consideration of certain evidence in making its sentencing determination—not the sufficiency of that evidence. Defendant forfeited that challenge by failing to object in the trial court. If defendant

10

believed that the trial court's reasons for imposing the upper term on count 1 were based on incompetent evidence, it was incumbent upon him to raise that concern to the trial court.

### b.     The merits

Even if defendant had not forfeited his challenge, we would reject it on the merits. The reasons for imposing the upper term on count 1 were " 'supported by available, appropriate, relevant evidence.' " (*People v. Black*, *supra*, 41 Cal.4th at p. 818, fn. 7.)  It is undisputed that defendant submitted to a blood test, although the parties were awaiting those results as of the preliminary hearing.  Both the court and the prosecutor made specific references to a .24 blood alcohol content at defendant's initial sentencing hearing.  Defendant's attorney advanced no objection to those references, and in fact referred to defendant's "alcohol level" herself to explain his inability to recall events. We infer from this record that defendant's blood test results were reported and that all parties were aware of those results.  (See *People v. Green* (1979) 95 Cal.App.3d 991, 1001 [recognizing " 'fundamental principle that all presumptions and intendments are in favor of the regularity of the action of the lower court in the absence of a record to the contrary.' "].)  The court did not abuse its discretion by relying, in part, on a .24 blood alcohol level to support the upper term sentence on count 1.

Defendant's reliance on *People v. Self* (2012) 204 Cal.App.4th 1054, *People v. Crane* (2006) 142 Cal.App.4th 425, and *People v. Encinas* (1998) 62 Cal.App.4th 489 is misplaced.  In *Encinas*, the appellate court concluded that the prosecutor had failed to prove that the defendant's alleged prior conviction for assault on a peace officer was an assault committed with a deadly weapon.  (*Id.* at pp. 490–491.)  The court rejected the Attorney General's argument that the trial court may have learned details about the assault in considering an earlier motion to dismiss the allegation, noting that such information did not relieve the prosecutor from proving the allegation at trial.  (*Id.* at

11

p. 492.)  In contrast to *Encinas*, defendant here challenges a discretionary sentencing decision, not an allegation which the prosecution bears the burden of proving at trial.

*Crane* and *Self* involved the extent to which an out-of-state drunk driving conviction can serve as a prior conviction under Penal Code section 23626 for purposes of imposing a sentencing enhancement.  The defendant in *Crane* admitted a conviction from Colorado for "driving while ability impaired," but argued the Colorado offense would not constitute a violation of Vehicle Code section 23152, subdivision (a) if committed in California.  (*Crane*, *supra*, 142 Cal.App.4th at pp. 429–430.)  The *Crane* court held that the Colorado statute, which criminalizes alcohol impairment to the slightest degree, punishes conduct which would not necessarily constitute driving under the influence under California law.  (*Id*. at p. 432.)  *Crane* concluded that the trial court erred by considering a .093 blood alcohol level noted in Colorado documents (including the arresting officer's report and handwritten notes on the court minutes) because those documents "were not proper parts of the 'record of conviction' of which the court could take judicial notice, were inadmissible hearsay, and did not in any way establish that the BAC was either admitted by or adjudicated against defendant in Colorado."  (*Id*. at p. 434.)

In *Self*, an Arizona driving under the influence judgment was admitted to prove a prior conviction special allegation.  The defendant challenged the trial court's consideration of his blood alcohol level as shown by handwritten notations on the judgment to establish that the out-of-state conviction qualified as a conviction under California law.  The defendant in *Self* unsuccessfully moved to dismiss the allegation in the trial court, arguing that the blood alcohol level notations were not part of the conviction record.  (*Self*, *supra*, 204 Cal.App.4th at p. 1057.)  Agreeing, the *Self* court concluded that the blood alcohol level was not part of the conviction record in that case because it was not relevant to the determination whether he drove while impaired "to the slightest degree' " under Arizona law.  (*Id*. at p. 1061.)

12

*Crane* and *Self* are distinguishable because they address a trial court's reliance on documents prepared by another court or law enforcement agency to prove a prior conviction under California law. The rules of evidence, which apply to a prior conviction adjudication, do not strictly limit the trial court when considering the basis for a discretionary prison sentence. (Cal. Rules of Court, rule 4.420(b).) In further contrast to *Self*, where the defendant preserved his evidentiary challenge in the trial court, here defendant not only failed to challenge the basis for the .24 blood alcohol level at either his initial sentencing hearing or during the probation violation and ultimate sentencing proceedings, but counsel acknowledged "the alcohol level" to explain the failure to fully account for his conduct.

### c.    Prejudice

Even if we were to conclude that the court erred by relying in part on a .24 blood alcohol level to impose the upper term on count 1, we would deem that error harmless. A reversal and remand for resentencing would be appropriate only where it is reasonably probable that defendant would have received a more favorable result. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) It is reasonably probable that the prosecutor, on remand, would present admissible evidence of the blood test results. (See *Butler*, *supra*, 31 Cal.4th at p. 1129 [remanding for prosecution to produce additional evidence to establish probable cause to support sentencing order].) And the record shows that defendant was highly impaired regardless of the level of alcohol measured in his blood. He could not maintain his balance and passed out in the patrol car. As noted in the probation officer's initial report, defendant's reckless conduct threatened great bodily harm and placed the public in immediate danger. Even without the test results, we do not see a reasonable probability of a more favorable sentencing result.

### III.  DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.


_____

Márquez, J.